**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

May 15, 2015

Westfield Insurance Company
P O Box 5001
Westfield Center, OH 44251
NAIC # 24112

Certified Mail
Return Receipt Requested
7012 3460 0002 8949 1936
Cashier # 20204

Re:     Carole Copenhaver  V.  Westfield Insurance Company

Docket # 15-CV-312I

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served May 15, 2015, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Sevier County
    125 Court Avenue, Ste 204E
    Sevierville, Tn 37862

RECEIVED

MAY 2 2 2015

Legal / Compliance Dept

# STATE OF TENNESSEE
## Circuit Court of Sevier County
## AT SEVIERVILLE

| | |
|---|---|
| **CAROLE COPENHAVER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **VS.** ) | **Civil Action** 15CV8129 |
| ) | **JURY DEMANDED** |
| **WESTFIELD INSURANCE COMPANY,** ) | |
| ) | |
| **Defendant.** ) | **SUMMONS** |

To the above named Defendant: Westfield Insurance Company
      Through the Commissioner of Insurance
      500 James Robertson Parkway
      Davy Crockett Tower
      Nashville, TN 37243-0565

You are hereby summoned and required to serve upon **Cynthia Richardson Wyrick, Counsel for the Plaintiffs, whose address is 103 Bruce Street, Sevierville, TN 37862**, an answer to the Complaint, which is herewith served upon you within (30) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Witness _____, Clerk of said court, at office the ___ day
of ___ May ___, 2015, at 3:37 o'clock ___ m.

                        ,Clerk

        By _____
                 Deputy Clerk

## NOTICE

**TO THE DEFENDANT:**

Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. (T.C.A. 26-2-114)

Received this ____ day of _____, 2015._____Deputy Sheriff

(This summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedure)

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return, that on the _____ day of_____, 2015, I served this summons together with the complaint herein as follows:_____

_____

_____
Sheriff-Deputy Sheriff

# IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

## CAROLE COPENHAVER,

### PLAINTIFF,

**VS.**                                              **NO.**   $15$-$\omega$-$32\text{-}I$

**JURY DEMAND**

## WESTFIELD INSURANCE COMPANY,

### DEFENDANT.

## COMPLAINT

Comes Plaintiff, Carole A. Copenhaver, by and through counsel, and for her complaint against Defendant, Westfield Insurance Company, would show unto this Honorable Court as follows:

1.      That Plaintiff, Carole A. Copenhaver, is a citizen and resident of Knox County, Tennessee, residing at 5901 Loice Lane, Knoxville, TN 37924.

2.      That Defendant, Westfield Insurance Company (hereinafter "Westfield"), is an Ohio corporation licensed to sell and issue insurance policies in Tennessee, and it may be served with process through the Tennessee Commissioner of Insurance.

3.      That on August 13, 2013, Defendant, Westfield, issued a business owners policy to Ralph T. Copenhaver, DDS (hereinafter "Dr. Copenhaver"), which included fire insurance coverage in the amount of Six Hundred, Fifty-Eight Thousand and 00/100 ($658,000.00) Dollars for Dr. Copenhaver's dental office located at 2610 Florence Drive, Pigeon Forge, Sevier County, Tennessee 37863.   (A copy of the referenced policy is attached hereto as Exhibit "A".)

Law Offices

GLE, GASS & RICHARDSON

James L. Gass
Cynthia Richardson Wyrick
Anna C. Penland

OGLE BUILDING
103 BRUCE ST.
SEVIERVILLE, TENN.
37862

4.      That Plaintiff is Dr. Copenhaver's ex-wife and pursuant to the Marital Dissolution Agreement entered into by the parties in December, 2004, adopted by reference in the Decree of Divorce entered by the Fourth Circuit Court for Knox County, Tennessee, Plaintiff was granted a security interest in the real property located at 2610 Florence Drive, Pigeon Forge, Tennessee 37863. (A copy of the Marital Dissolution Agreement and Decree of Divorce entered by the Fourth Circuit Court for Knox County, Tennessee approving same are attached hereto as collective Exhibit "B".)

5.      That a Deed of Trust was executed by Dr. Copenhaver in favor of Plaintiff, which required Dr. Copenhaver to provide her with "notice of insurance and keep all improvements and buildings on said Demised Premises insured against all hazards and risks through some reliable insurance company or companies in such amounts as may be from time to time specified by the Beneficiary, but in no event less than the replacement costs of the buildings and structures located thereon at the time of the loan or extension(s) of credit secured hereby, until the total sum and obligations hereby secured are fully paid and performed, and to have **any loss payable to Beneficiary, as "Mortgagee", and to list Beneficiary on any and all such policies as the "Loss Payee" and an "Additional Insured."'**   (Emphasis added.)

6.      That the Deed of Trust was filed in the Register's Office for Sevier County, Tennessee on January 6, 2005; thus, it had been of record for many years at the time Defendant, Westfield, issued a policy to Dr. Copenhaver. (A copy of the recorded Deed of Trust is attached hereto as Exhibit "C".)

7.      That on May 10, 2014, Dr. Copenhaver's dental office was destroyed by fire.

2

8.      That Defendant, Westfield, paid First Tennessee Bank the sum of Two Hundred Seventy-Three Thousand, Three Hundred Eighty-Seven and 56/100 ($273,387.56) Dollars in satisfaction of the first mortgage indebtedness owing on the property but have failed and refused to satisfy the mortgage held by Plaintiff against the real property.

9.      That Defendant, Westfield, has also refused to pay any proceeds to Dr. Copenhaver for the loss of premises, claiming that he breached the policy in multiple ways and as a result is not entitled to recover. (A copy of the denial letter sent to Dr. Copenhaver by Westfield is attached hereto as Exhibit "D".)

10.     That the Marital Dissolution Agreement at issue required Dr. Copenhaver to pay to Plaintiff the greater of the sum of One Hundred, Twenty-Three Thousand and 00/00 ($123,000.00) Dollars of fifty (50%) percent of the sales proceeds from the sale of the dental office and real property at such time as it was sold, and there was no timetable given for the sale. Plaintiff would show that the premises being destroyed triggered Dr. Copenhaver's obligation to pay her under the Marital Dissolution Agreement, as he is no longer using the premises to practice dentistry, which was the purpose of not requiring a specific date for the sale of the premises. Plaintiff would show that Defendant, Westfield, should be required to pay to her one-half of the proceeds from the total fire loss for the building and debris removal, subtracting only one-half of the first mortgage indebtedness, which would be in the amount of Two Hundred, Four Thousand, Eight Hundred, Six and 22/100 ($204,806.22) Dollars.

11.     That while Defendant, Westfield, has taken the position that Dr. Copenhaver was involved in the destruction of the premises by fire and is not entitled to

3

recover, Defendant, Westfield, clearly understood that any potential wrongdoing engaged in by Dr. Copenhaver is not attributable to a mortgage holder, as demonstrated by their satisfaction of the first mortgage indebtedness to First Tennessee Bank.

12. That despite the fact that Plaintiff had no involvement in the destruction, Defendant, Westfield, has failed and refused to satisfy the mortgage indebtedness owing to Plaintiff, although written demand has been made of Defendant, Westfield, through its counsel, for satisfaction.

13. That on Page 2 of 3 of the Policy Declarations in the policy issued to Dr. Copenhaver by Defendant, Westfield, the policy specifically provides that a mortgage holder is automatically declared an "Additional Insured" under the policy when required by contract, and the Deed of Trust did contractually require Dr. Copenhaver to so list her.

14. That the failure of Defendant, Westfield, to pay Plaintiff's claim is without justification, and the payment has been withheld from Plaintiff in bad faith such that she is entitled to recover, in addition to the amount owing under the policy, and additional amount equal to twenty-five(25%) percent of what is due her, for an additional payment of Fifty-One Thousand, Two Hundred, One and 56/100 ($51,201.56) Dollars, pursuant to T.C.A. § 56-7-105.

**WHEREFORE, PREMISES CONSIDERED, PLAINTIFF, CAROLE COPENHAVER, PRAYS:**

1. That Defendant, Westfield Insurance Company, be served with process through the Tennessee Commissioner of Insurance, and that she be required to answer hereto within the time required by law.

2. That a jury be impaneled to try this matter.

4

3.  That she be awarded a judgment against Defendant, Westfield, in the amount of Two Hundred, Four Thousand, Eight Hundred, Six and 22/100 ($204,806.22) Dollars in satisfaction of the mortgage she holds for the premises located at 2610 Florence Drive, Pigeon Forge, Sevier County, Tennessee 37863, that are insured by Defendant.

4.  That she be awarded an additional judgment in the amount of Fifty-One Thousand, Two Hundred, One and 56/100 ($51,201.56) Dollars, due to the bad faith of Defendant, Westfield, in refusing to satisfy the mortgage she holds against the premises at issue.

5.  That the costs of this cause be taxed against Defendant, Westfield.

6.  That she have such further and general relief to which she may be entitled.

**RESPECTFULLY** submitted this the 8th day of May, 2015.

**CAROLE COPENHAVER**

BY:

**CYNTHIA RICHARDSON WYRICK**
**Ogle, Gass & Richardson, P.C.**
**103 Bruce Street**
**Post Office Box 5365**
**Sevierville, TN   37864-5365**
**(865) 453-2866**
**Attorney for Plaintiff**

5

# *Commercial Insurance Coverage Policy*



**THIS POLICY HAS BEEN
ESPECIALLY DESIGNED**

*FOR:*

*RALPH T COPENHAVER DDS DBA THE*

*BY:*

*MOWERY INSURANCE*

*THROUGH:*

*WESTFIELD INSURANCE COMPANY*



WESTFIELD
INSURANCE
Sharing Knowledge. Building Trust.®

**EXHIBIT
"A"**

ID 7004 (0411)

*IN WITNESS WHEREOF,* this Company has caused this policy to be signed by its President and Sec-
retary and countersigned by a duly authorized representative of the Company if required by law.

Frank A Carrino *Secretary*          Edward J. Langerd III *President*

# IMPORTANT NOTICE TO POLICYHOLDERS - ASBESTOS EXCLUSION ATTACHED

This policy excludes asbestos related losses from the Businessowners Liability Coverage Form.

**AD 87 17  11 05**

# NOTICE OF UNDERWRITING INFORMATION PRACTICES



08/09/13

**WESTFIELD**
INSURANCE
Sharing Knowledge. Building Trust.®

RALPH T COPENHAVER

BOP 0647564

**Reference Number:**     131-981-417-128-27

The underwriting of the insurance for a business owned by you is based on a variety of considerations. One of these factors may be your personal insurance score. Others may include motor vehicle records, loss reports, inspections, and information you provided on your application to help determine a fair premium for your policy.

Your personal insurance score is calculated for our insurance company by an independent firm based on information from consumer credit reports. Information used in scoring includes outstanding debt, length of credit history, late payments history, new applications for credit, and types of credit in use. It does not use information about income, age, marital status, religion or ethnic group.

Nobody has a perfect insurance score. The score changes as new information is added to your credit report. To improve a score, you should pay bills on time, keep balances low on unsecured revolving debt like credit cards, and apply for new credit accounts only as needed.

It's also a good idea to periodically obtain a copy of your credit reports to check for any inaccuracies. To receive a free copy of your current credit report, contact LexisNexis Risk Assets Inc. within 60 days from the date of this letter.

- By mail:       LexisNexis Consumer Center
                 P.O. Box 105289, Atlanta, GA 30348
- By phone:      1.800.456.6004, Monday-Friday, 8 a.m.-7 p.m. Eastern Time
- By internet:   www.consumerdisclosure.com

Be prepared with the reference number above whenever you contact LexisNexis. You have the right to directly dispute with LexisNexis the accuracy and completeness of your report. (Please note, LexisNexis was not directly involved in the underwriting or pricing of your insurance policy.)

Regardless of your insurance score, whether it is high or low, we are required to report that you can improve your score by addressing some of the areas listed below:

(-)  RECENT ADVERSE PUBLIC RECORD

(-)  NUMBER OF ADVERSE PUBLIC RECORDS (JUDGMENT, LIEN, BANKRUPTCY, FORECLOSURE &/OR GARNISHMENT)

(-)  RECENT COLLECTION

(-)  NUMBER OF COLLECTION AGENCY FILINGS

AD 90 54  12 11

Case 3:15-cv-00244-TAV-HBG   Document 1-1   Filed 06/10/15   Page 12 of 162   PageID #: 14

# Welcome to Westfield Insurance!



**WESTFIELD**
**INSURANCE**
Sharing Knowledge. Building Trust.®

## Billing Services
We will mail a separate invoice approximately 20 days before the effective date of your policy. Please mail all payments in the envelope provided with your invoice to Westfield Insurance, PO Box 9001566, Louisville, KY, 40290-1566.

## WIC*draw*
WIC*draw* is an electronic funds transfer program that will save you time and money. With your approval, Westfield Insurance will draw payments directly from your checking, savings, or credit union account. To enroll in WIC*draw*, complete the enrollment form enclosed with your invoice.

## Pay by Phone
Call JPMorgan Chase Pay Connexion's automated toll-free number at 1.800.766.9133 to make your payment using your Visa®, MasterCard®, Discover®, debit card or checking account. JPMorgan will charge a convenience fee for this service and reserves the right to limit the amount of each transaction.

## Payment Plans and Installment Fees
Your invoice will indicate the payment plan you have selected. You may choose another payment plan at any time by contacting billing customer service at 1.800.552.9134. Some exceptions apply. Installment fees are charged according to the payment option you select and vary by state.

| Pay Plan | Pay by Check | Pay electronically "WIC*draw*" |
|---|---|---|
| Monthly | $5.00 | - 0 - |
| Quarterly | $5.00 | - 0 - |
| Semi-Annual | - 0 - | - 0 - |
| Annual | - 0 - | - 0 - |

## Due Dates and Additional Assistance
Payment is expected on or before the due date. You may choose to change the due date on your account or contact us at **1.800.552.9134** for additional information.

## Thank You!
We appreciate your business. If you have any questions about your insurance protection, please contact your independent agent.

AD 759  08 10

One Park Circle • P.O. Box 5001 • Westfield Center, OH  44251-5001 • 1.800.243.0210 • fax 330.887.0840 • www.westfieldinsurance.com

THIS NOTICE DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND
CONDITIONS OF ANY COVERAGE UNDER THE POLICY. IF THERE IS ANY
CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF
YOUR POLICY SHALL PREVAIL.

# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM
# INSURANCE COVERAGE and PREMIUM

On November 26, 2002, the Terrorism Risk Insurance Act of 2002 (hereafter the "Act") was signed into law
by the President. The Act, as amended in 2007, defines an "act of terrorism" in Section 102(1) to mean
any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and
the Attorney General of the United States (1) to be an act of terrorism; (2) to be a violent act or an act that
is dangerous to human life, property, or infrastructure; (3) to have resulted in damage within the United
States, or outside the United States in the case of certain air carriers or vessels or the premises of a
United States mission; and (4) to have been committed by an individual or individuals as part of an effort
to coerce the civilian population of the United States or to influence the policy or affect the conduct of the
United States Government by coercion.

Coverage for acts of terrorism as defined by the Act, as amended, is included in your current policy
and/or in any policy quoted for you. You should know that under your existing coverage losses resulting
from certified acts of terrorism may be partially reimbursed by the United States Government under a
formula established by federal law. Under this formula, the United States Government generally reim-
burses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the in-
surance company providing the coverage. **You should also know that the Act, as amended, contains a
$100 billion cap that limits United States Government reimbursement as well as insurers' liability for
losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in
any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage
may be reduced.** Under the Act, as amended, this formula is currently effective through December 31,
2014.

The actual insurance coverage provided by your policy for acts of terrorism as defined in the Act, as
amended, as is true for all coverages, is limited by the terms, conditions, exclusions, limits, other pro-
visions of your policy, any endorsements to the policy and generally applicable rules of law.

## PREMIUM CHARGED

During your current policy period, the portion, if any, of your premium that is attributable to coverage for
acts of terrorism as defined in the Act is $_____ (refer to Common Policy Declarations if blank).

**If you do not desire the coverage** for acts of terrorism as defined in the Act, as amended, you may reject
the coverage and instruct the insurance company to remove it and refund the premium described above.
**To reject the coverage, you must:**

1) advise the insurance company by letter (on your company letterhead),

2) signed by the owner, representative, or properly designated official of the named insured.

The insurance company must receive your letter within 60 days from the date shown at the bottom right
side of the forms titled "Common Policy Declarations". Please refer to "Common Policy Declarations" for
the mailing address of the insurance company.

If your policy premium is $500, that may represent a minimum premium. In that case, the portion that is
attributable to acts of terrorism as defined in the Act, as amended, may be included within that minimum
and your total premium will not be reduced if you reject coverage for acts of terrorism. The minimum
premium will still apply.

Should you have any question regarding this notice, please contact your insurance agent.

AD 85 84  01 08



## IMPORTANT NOTICE TO OUR POLICYHOLDERS

**WESTFIELD INSURANCE**
Sharing Knowledge. Building Trust.®

*Westfield Insurance Fraud Hot-Line*

PLEASE READ THIS IMPORTANT INFORMATION

- Fraudulent insurance claims cost us all money.
- Call us if you have information concerning a fraudulent insurance claim.
- All information will be kept confidential.
- Call and discuss your information with a trained investigator, or leave the information anonymously on a telephone answering machine.
- We can all help fight insurance fraud.

AD 8522 (08-10)

## Be a Fraud Buster
## 1-800-654-6482

**Detach and retain information below for future use.**



**Fraud Hot-Line**
**1-800-654-6482**


WESTFIELD
INSURANCE
Sharing Knowledge. Building Trust.®

**Westfield Center, Ohio 44251**
**www.westfieldinsurance.com**



**Fraud Hot-Line**
**1-800-654-6482**


WESTFIELD
INSURANCE
Sharing Knowledge. Building Trust.®

**Westfield Center, Ohio 44251**
**www.westfieldinsurance.com**



# IMPORTANT NOTICE TO OUR POLICYHOLDERS

**WESTFIELD**
**INSURANCE**
Sharing Knowledge. Building Trust.®

***Westfield Insurance Fraud Hot-Line***

PLEASE READ THIS IMPORTANT INFORMATION

- Fraudulent insurance claims cost us all money.
- Call us if you have information concerning a fraudulent insurance claim.
- All information will be kept confidential.
- Call and discuss your information with a trained investigator, or leave the information anonymously on a telephone answering machine.
- We can all help fight insurance fraud.

AD 8522  (08-10)

## Be a Fraud Buster
## 1-800-654-6482

### Detach and retain information below for future use.



**Fraud Hot-Line**
**1-800-654-6482**



**Westfield Center, Ohio  44251**
**www.westfieldinsurance.com**



**Fraud Hot-Line**
**1-800-654-6482**



**Westfield Center, Ohio  44251**
**www.westfieldinsurance.com**

# WESTFIELD INSURANCE
Sharing Knowledge. Building Trust.®

**BUSINESS OWNERS POLICY**
**NEW**
**COMMON POLICY DECLARATIONS**

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | |
|---|---|---|---|
| **NAMED INSURED AND MAILING ADDRESS** | **AGENCY** 41-01195 | **PROD.** | **000** |

RALPH T COPENHAVER DDS DBA THE
2610 FLORENCE DR
PIGEON FORGE TN 37863

MOWERY INSURANCE
9050 EXECUTIVE PARK DR C100
KNOXVILLE TN 37923-4677
TELEPHONE 865-584-1115

**Policy Number: BOP 0 647 564** . . **WIC Account Number: 4170026416** . M

| Policy Period | From | 08/09/13 | at 12:01 A.M. Standard Time at your |
|---|---|---|---|
| | To | 08/09/14 | mailing address shown above. |

Business: DENTIST OFFICE                    Named Insured is:  Individual

In return for the payment of the premium, and subject to all terms of this
policy, we agree with you to provide the insurance as stated in this policy.

## THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS

| BUSINESSOWNERS COVERAGE PART | $ | 3,939.00 |
|---|---|---|
| TERRORISM INSURANCE COVERAGE | $ | 26.00 |

Policy Annual Premium              $    3,965.00

Total Advance Annual Policy Premium      $    3,965.00

The above is a summary of your coverages. For more detail,
please refer to the individual coverage parts inside your policy.

Forms and Endorsements applicable to all coverage parts:
IL7002   0488*, IL0017   1198*, ID7004   0411*.

| COUNTERSIGNED: | | BY | |
|---|---|---|---|
| | Date | | Authorized Representative |

**PAGE   01 OF   01**          IL 70 02 (04-88)          08/11/13          ORIGINAL

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

A. **Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. **Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. **Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. **Inspections And Surveys**

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statues, ordinances or regulations, of boilers, pressure vessels or elevators.

E. **Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

F. **Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

IL 00 17 11 98

# WESTFIELD INSURANCE
### Sharing Knowledge. Building Trust.®

## NEW
## BUSINESSOWNERS POLICY DECLARATIONS

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY |
|---|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY | 41-01195 | PROD. | 000 |
|---|---|---|---|---|

| | |
|---|---|
| RALPH T COPENHAVER DDS DBA THE<br>2610 FLORENCE DR<br>PIGEON FORGE TN 37863 | MOWERY INSURANCE<br>9050 EXECUTIVE PARK DR C100<br>KNOXVILLE TN 37923-4677<br>TELEPHONE 865-584-1115 |

**Policy Number: BOP 0 647 564** . . **WIC Account Number: 4170026416** . M

| Policy<br>Period | From 08/09/13<br>To 08/09/14 | at 12:01 A.M. Standard Time at your<br>mailing address shown above. |
|---|---|---|

## SCHEDULE OF DESCRIBED PREMISES

| Loc. | Bldg. | Address, City & State | Construction | Occupancy |
|---|---|---|---|---|
| 001 | 001 | 2610 FLORENCE DR<br>PIGEON FORGE TN 37863 | Frame | Office |

## PROPERTY COVERAGES

| Loc. | Bldg. | Coverage | Limits of Insurance |
|---|---|---|---|
| 001 | 001 | Business Income & Extra Expense | Actual Loss Sustained |
| 001 | 001 | Building | $658,000 |
| 001 | 001 | Business Personal Property | $351,398 |

Building Limit - Automatic Increase: 8%

## LIABILITY AND MEDICAL PAYMENTS

| BUSINESS LIABILITY | Limits of Insurance |
|---|---|
| Each Occurrence Limit | $1,000,000 |
| General Aggregate Limit | $2,000,000 |
| Products/Completed Operations Aggregate Limit | $2,000,000 |
| Personal & Advertising Injury Limit(Per Person or Organization) | $1,000,000 ...... |
| Medical Expenses Each Person | $5,000 |
| Damage to Premises Rented To You Limit(Any One Premises) | $100,000 |

Each paid claim for the above coverages reduces the amount of insurance we provide during the applicable annual period. Please refer to Section II - Liability in the Businessowners Coverage Form and any attached endorsements.

## OPTIONAL COVERAGES

| Loc. | Bldg. | | | Limits of Insurance |
|---|---|---|---|---|
| ALL | ALL | Terrorism Insurance Coverage | | |
| ALL | ALL | Brands and Labels | | |
| ALL | ALL | Business Income (Extended) | | |
| | | Extended Period of Indemnity | Number of Days 60 | |
| ALL | ALL | Business Income - Ordinary Payroll | | |
| | | | Coverage Period 60 | |
| ALL | ALL | Computer Fraud and Funds Transfer Fraud Coverage | | $25,000 |
| ALL | ALL | Electronic Data | | $10,000 |
| ALL | ALL | Employee Dishonesty | | $25,000 |
| ALL | ALL | Forgery and Alteration | | $25,000 |
| ALL | ALL | Fire Department Service Charge | | $25,000 |
| ALL | ALL | Equipment Breakdown | | |
| | | Sublimit for Expediting Expenses | | $25,000 |
| | | Sublimit for Hazardous Substances | | $25,000 |
| | | Sublimit for Spoilage | | $25,000 |
| | | Sublimit for Computer Equipment | | $25,000 |
| | | Sublimit for Data Restoration | | $25,000 |
| | | Sublimit for CFC Refrigerants | | $25,000 |
| | | Sublimit for Demolition and ICC | | $25,000 |
| ALL | ALL | Interruption of Computer Operations | | $25,000 |
| ALL | ALL | Personal Property Off Premises | | $25,000 |
| 001 | 001 | Accounts Receivable | | $25,000 |
| 001 | 001 | Business Income from Dependent Properties | | $25,000 |
| 001 | 001 | Business Income and Extra Expense -<br>Revised Period of Indemnity | | 12 Months |
| 001 | 001 | Debris Removal Additional Insurance | | $25,000 |
| 001 | 001 | Fine Arts Coverage | | $25,000 |
| | | No coverage for Breakage provided.<br>Miscellaneous fine arts at a limit of insurance of $25,000<br>with no one item to exceed $5,000 | | |



**WESTFIELD**
INSURANCE
Sharing Knowledge. Building Trust.®

**NEW**
**BUSINESSOWNERS POLICY DECLARATIONS**

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | |
|---|---|---|---|
| **NAMED INSURED AND MAILING ADDRESS** | **AGENCY** | 41-01195 | **PROD.** |

| | | | 000 |

RALPH T COPENHAVER DDS DBA THE
2610 FLORENCE DR
PIGEON FORGE TN 37863

MOWERY INSURANCE
9050 EXECUTIVE PARK DR C100
KNOXVILLE TN 37923-4677
TELEPHONE 865-584-1115

**Policy Number: BOP 0 647 564**     .   **WIC Account Number: 4170026416**   .   **M**

| **Policy Period** | **From** 08/09/13 **To** 08/09/14 | **at 12:01 A.M. Standard Time at your mailing address shown above.** |
|---|---|---|

### OPTIONAL COVERAGES

| Loc. | Bldg. | | Limits of Insurance |
|---|---|---|---|
| 001 | 001 | Money and Securities - Inside Premises | $15,000 |
| 001 | 001 | Money and Securities - Outside Premises | $5,000 |
| 001 | 001 | Outdoor Property | |
| | | Any One Occurrence | $25,000 |
| | | Any One Tree, Shrub or Plant | $2,500 |
| 001 | 001 | Ordinance or Law | |
| | | Coverage 1 | Does not Apply |
| | | Coverage 2 and 3 Combined | $100,000 |
| | | Business Income and Extra Expense Optional Coverage:No | |
| 001 | 001 | Outdoor Signs | $10,000 |
| 001 | 001 | Signature Series Medical Offices Endorsement | Refer to Form |
| 001 | 001 | Spoilage | $50,000 |
| | | Refrigeration Agreement N/A | |
| | | Causes of Loss: | |
| | | Breakdown or Contamination | |
| | | Power Outage | |
| 001 | 001 | Utility Services - Direct Damage | |
| | | Covered Property: | |
| | | Building | |
| | | Utility Services: | |
| | | Water Supply | $25,000 |
| | | Communication Supply - Not Including Overhead | |
| | | Transmission Lines | $25,000 |
| | | Power Supply - Not Including Overhead | |
| | | Transmission Lines | $25,000 |
| | | Covered Property: | |
| | | Business Personal Property | |
| | | Utility Services: | |
| | | Water Supply | $25,000 |
| | | Communication Supply - Not Including Overhead | |
| | | Transmission Lines | $25,000 |
| | | Power Supply - Not Including Overhead | |
| | | Transmission Lines | $25,000 |
| 001 | 001 | Utility Services - Time Element | $25,000 |
| | | Utility Services: | |
| | | Water Supply | $25,000 |
| | | Communication Supply - Not Including Overhead | |
| | | Transmission Lines | $25,000 |
| | | Power Supply - Not Including Overhead | |
| | | Transmission Lines | $25,000 |
| 001 | 001 | Valuable Papers and Records | $100,000 |
| 001 | 001 | Water Back-Up and Sump Overflow | |
| | | Covered Property Annual Aggregate | $25,000 |
| | | Business Income and Extra Expense Annual Aggregate | $25,000 |

Only the coverages listed above are afforded

### OTHER INTERESTS

| Loc. | Bldg. | |
|---|---|---|
| ALL | ALL | Additional Insured - Managers or Lessors of Premises |
| | | Automatic status when required by contract |
| ALL | ALL | Additional Insured - Grantor of Franchise |
| | | Automatic status when required by contract |
| ALL | ALL | Additional Insured - Mortgagee, Assignee or Receiver |
| | | Automatic status when required by contract |
| ALL | ALL | Additional Insured - Owners or Other Interest From |

Case 3:15-cv-00244-TAV-HBG Document 1-1 Filed 06/10/15 Page 20 of 162 PageID #: 22

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - GRANTOR OF FRANCHISE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Name Of Person(s) Or Organization(s): |
|---|
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **C. Who Is An Insured in Section II - Liability:**

Any person(s) or organization(s) shown in the Schedule is also an insured, but only with respect to their liability as a grantor of a franchise to you.

© Insurance Services Office, Inc., 2009                           **BP 14 05  01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

A. The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

   If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

B. The following provision is added to Businessowners Standard Property Coverage Form BP 00 01, Businessowners Special Property Coverage Form **BP 00 02** or **Section I - Property** of Businessowners Coverage Form **BP 00 03**:

**APPLICATION OF OTHER EXCLUSIONS**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Form or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

© ISO Properties, Inc., 2007

BP 05 23 01 08

# *Commercial Insurance*
# *Coverage Policy*



**THIS POLICY HAS BEEN
ESPECIALLY DESIGNED**

*FOR:*

*RALPH T COPENHAVER DDS DBA THE*

*BY:*

*MOWERY INSURANCE*

*THROUGH:*

*WESTFIELD INSURANCE COMPANY*



**WESTFIELD**
INSURANCE
Sharing Knowledge, Building Trust.®

ID 7004 (0411)

POLICY NUMBER: BOP 0647564                                   BUSINESSOWNERS

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Name Of Person Or Organization: |
| --- |
|  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Paragraph **K. Transfer Of Rights Of Recovery Against Others To Us in Section III - Common Policy Conditions** is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

© ISO Properties, Inc., 2004                                 **BP 04 97 01 06**

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# EQUIPMENT BREAKDOWN COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following is added to Paragraph A.3. Covered Causes of Loss in Section I - Property:

**Additional Coverage - Equipment Breakdown**

The term Covered Cause of Loss includes the Additional Coverage Equipment Breakdown as described and limited below.

1. We will pay for direct physical damage to Covered Property that is the direct result of an "accident." As used in this Additional Coverage, an "Accident" means direct physical damage to "covered equipment." The event must be one of the following:

   a. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

   b. Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires;

   c. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

   d. Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

   e. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2. The following coverages also apply to the direct result of an "accident". These coverages do not provide additional amounts of insurance.

   a. Expediting Expenses

      With respect to your damaged Covered Property, we will pay, up to $25,000 unless otherwise shown in the Declarations, the reasonable extra cost to:

      (i) Make temporary repairs; and

      (ii) Expedite permanent repairs or replacement.

   b. Hazardous Substances

      We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance". This includes the additional expenses to clean up or dispose of such property.

      This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in 2.c.(1)(b) below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

      The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000 unless otherwise shown in the Declarations.

   c. Spoilage

      (1) We will pay:

         (a) for physical damage to "perishable goods" due to spoilage;

         (b) for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;

         (c) any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:15-cv-00244-TAV-HBG   Document 1-1   Filed 06/10/15   Page 25 of 162   PageID #: 27

(2) If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident", less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Loss Payment condition.

The most we will pay for loss, damage or expense under this coverage is $25,000 unless otherwise shown in the Declarations.

d. **Computer Equipment**

We will pay for loss or damage caused by or resulting from an "accident" to "computers".

The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur is $25,000 unless otherwise shown in the Declarations. "Computers" used primarily to control or operate "covered equipment" are not subject to this limit.

e. **Data Restoration**

We will pay for your reasonable and necessary cost to research, replace and restore lost "electronic data."

The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000 unless otherwise shown in the Declarations.

f. **CFC Refrigerants**

We will pay for the additional cost to repair or replace Covered Property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances. This means the additional expense to do the least expensive of the following:

(1) Repair the damaged property and replace any lost CFC refrigerant;

(2) Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

(3) Replace the system with one using a non-CFC refrigerant.

Additional costs mean those beyond what would have been required had no CFC refrigerant been involved.

The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain, necessary Extra Expense you incur and loss under Spoilage coverage, is $25,000 unless otherwise shown in the Declarations.

g. **Demolition and Increased Cost of Construction**

If an "accident" damages a building that is Covered Property; and the loss is increased by enforcement of any ordinance or law in force at the time of the "accident" that regulates the construction or repair of buildings, or establishes zoning or land use requirements, we will pay for the following additional costs to comply with such ordinance or law:

(1) Your actual expenditures for the cost to demolish and clear the site of undamaged parts.

(2) Your actual expenditures for increased costs to repair, rebuild or construct the building. If the building is repaired or rebuilt, it must be intended for similar use or occupancy as the current building, unless otherwise required by zoning or land use ordinance or law.

We will not pay for:

(3) Any fine;

(4) Any liability to a third party;

(5) Any increase in loss due to a "hazardous substance"; or

(6) Increased construction costs until the building is actually repaired or replaced.

The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000 unless otherwise shown in the Declarations.

**h. Service Interruption**

    **(1)** Any insurance provided for Business Income, Extra Expense or Spoilage is extended to apply to your loss, damage or expense caused by an "accident" to equipment that is owned by a utility, landlord or other supplier with whom you have a contract to supply you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

    **(2)** Service Interruption coverage will not apply unless the failure or disruption of service exceeds 24 hours immediately following the "accident".

    **(3)** The most we will pay for loss, damage or expense under this coverage is the limit that applies to Business Income, Extra Expense or Spoilage.

**B.** The following is added to Paragraph B. Exclusions:

**Equipment Breakdown Exclusions**

All exclusions in the Businessowners Coverage Form apply except as modified below and to the extent that coverage is specifically provided by this Additional Coverage Equipment Breakdown.

**1.** The exclusions are modified as follows:

    **a.** The following is added to Exclusion **B.1.g.:**

    However, if electrical "covered equipment" requires drying out because of Water as described in g.(1), through g.(3) above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies.

    **b.** As respects this endorsement only, the last paragraph of Exclusion **B.1.h.** is deleted and replaced by the following:

    However, if excluded loss or damage, as described in Paragraph **(1)**

above results in an "accident," we will pay only for the loss, damage or expense caused by such "accident."

    **c.** As respects this endorsement only, the last paragraph of Exclusion **B.2.l.** is deleted and replaced with the following:

    But if an excluded cause of loss that is listed in 2.l.(1) through (7) results in an "accident," we will pay for the loss, damage or expense caused by that "accident."

    **d.** The following is added to Exclusions **B.2.m.** and **B.2.n:**

    We will also pay for direct physical loss or damage caused by an "accident."

**2.** We will not pay under this endorsement for loss, damage or expense caused by or resulting from:

    **a.** any defect, programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality or other condition within or involving "electronic data" of any kind. But if an "accident" results, we will pay for the resulting loss, damage or expense; or

    **b.** any of the following tests:

    a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment.

**3.** With respect to Service Interruption coverage, we will also not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except as specially provided in **A.1.c.** above); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing or collapse; flood or earth movement.

**4.** With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for:

    **a.** loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business; or

    **b.** any increase in loss resulting from an agreement between you and your customer or supplier.

h. **Service Interruption**

   (1) Any insurance provided for Business Income, Extra Expense or Spoilage is extended to apply to your loss, damage or expense caused by an "accident" to equipment that is owned by a utility, landlord or other supplier with whom you have a contract to supply you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

   (2) Service Interruption coverage will not apply unless the failure or disruption of service exceeds 24 hours immediately following the "accident".

   (3) The most we will pay for loss, damage or expense under this coverage is the limit that applies to Business Income, Extra Expense or Spoilage.

B. The following is added to Paragraph B. Exclusions:

**Equipment Breakdown Exclusions**

All exclusions in the Businessowners Coverage Form apply except as modified below and to the extent that coverage is specifically provided by this Additional Coverage Equipment Breakdown.

1. The exclusions are modified as follows:

   a. The following is added to Exclusion **B.1.g.**:

      However, if electrical "covered equipment" requires drying out because of Water as described in **g.(1)**, through **g.(3)** above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies.

   b. As respects this endorsement only, the last paragraph of Exclusion **B.1.h.** is deleted and replaced by the following:

      However, if excluded loss or damage, as described in Paragraph **(1)** above results in an "accident," we will pay only for the loss, damage or expense caused by such "accident."

   c. As respects this endorsement only, the last paragraph of Exclusion **B.2.l.** is deleted and replaced with the following:

      But if an excluded cause of loss that is listed in **2.l.(1)** through **(7)** results in an "accident," we will pay for the loss, damage or expense caused by that "accident."

   d. The following is added to Exclusions **B.2.m.** and **B.2.n**:

      We will also pay for direct physical loss or damage caused by an "accident."

2. We will not pay under this endorsement for loss, damage or expense caused by or resulting from:

   a. any defect, programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality or other condition within or involving "electronic data" of any kind. But if an "accident" results, we will pay for the resulting loss, damage or expense; or

   b. any of the following tests:

      a hydrostatic, pnuematic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment.

3. With respect to Service Interruption coverage, we will also not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except as specially provided in **A.1.c.** above); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing or collapse; flood or earth movement.

4. With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for:

   a. loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business; or

   b. any increase in loss resulting from an agreement between you and your customer or supplier.

5. We will not pay under this endorsement for any loss or damage to animals.

C. Conditions

The following conditions are in addition to the Conditions in the Businessowners Coverage Form.

1. Suspension

Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment". This can be done by mailing or delivering a written notice of suspension to:

a. your last known address; or

b. the address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment." If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

2. Jurisdictional Inspections

If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

3. Environmental, Safety and Efficiency Improvements

If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

However, we will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality. This condition does not increase any of the applicable limits. This condition does not apply to any property to which Actual Cash Value applies.

D. The following are added to H. Property Definitions:

1. "Covered equipment"

a. "Covered equipment" means Covered Property:

(1) that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

(2) which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

b. None of the following is "covered equipment":

(1) structure, foundation, cabinet, compartment or air supported structure or building;

(2) insulating or refractory material;

(3) sewer piping, buried vessels or piping, or piping forming a part of a sprinkler system;

(4) water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

(5) "vehicle" or any equipment mounted on a "vehicle";

(6) satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

(7) dragline, excavation or construction equipment; or

(8) equipment manufactured by you for sale.

2. "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

3. "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

4. "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

5. "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

The most we will pay for loss, damage or expense under this endorsement arising from any "one accident" is the applicable Limit of Insurance in the Declarations. Coverage provided under this endorsement does not provide an additional amount of insurance.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# BUSINESSOWNERS EXPANDED LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SECTION II - LIABILITY

Under **SECTION II - LIABILITY, A. Coverages, 1. Business Liability, f. Coverage Extension - Supplementary Payments** is amended as follows:

Item **(1)(b)** is deleted and replaced with the following:

Up to $750 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

The following coverages are added to **A. Coverages:**

### 3. Voluntary Property Damage

**a. Insuring Agreement**

We will pay, at your request, for "property damage" to property of others caused by you, or while in your possession, arising out of your business operations.

**b. Limits of Insurance**

The most we will pay under Voluntary Property Damage for "loss" arising out of any one "occurrence" is $250. The most we will pay for the sum of all "losses" under this coverage is $1,000.

**c. Deductible**

We will not pay for "loss" in any one "occurrence" until the amount of "loss" exceeds $250. We will then pay the amount of "loss" in excess of $250, up to the applicable Limit of Insurance for this coverage as listed in Paragraph **b.** above.

**d. Exclusions**

The following additional exclusions apply to the insurance coverage provided under Voluntary Property Damage:

(1) "Loss" of property at premises owned, rented, leased, operated or used by you.

(2) "Loss" of property while in transit;

(3) "Loss" of property owned by, rented to, leased to, borrowed by or used by you;

(4) The cost of repairing or replacing:

(a) "Your work" defectively or incorrectly done by you; or

(b) "Your product" manufactured, sold or supplied by you;

unless the "property damage" is caused directly by you after delivery of "your product" or completion of "your work" and resulting from a subsequent undertaking.

(5) "Loss" of property caused by or arising out of the "products-completed operations hazard."

**e. Actual Cost**

In the event of covered "loss", you shall, if requested by us, replace the damaged property or furnish the labor and materials necessary for repairs thereto at your actual cost, excluding profit or overhead charges.

**f. Definition**

For coverages provided under Voluntary Property Damage the following definitions are added to Paragraph F. Liability and Medical Expenses Definitions of Section II LIABILITY.

"Loss" means unintentional damage or destruction but does not include disappearance, theft, or loss of use.

### 4. Care, Custody or Control

**a. Insuring Agreement.**

We will pay those sums the insured becomes legally obligated to pay as damages because of "property damage" to:

(1) Property of others that is loaned to you;

(2) Property of others while in your care, custody or control or property as to which you are exercising physical control if the "property damage" arises out of your business operation.

**b. Limits of Insurance**

The most we will pay under Care, Custody or Control for "property damage" is $1,000 for each "occurrence". The most we will pay for the sum of all damages because of "property damage" under this coverage is $5,000.

**c. Deductible**

We will not pay for "property damage" in any one "occurrence" until the amount of "property damage" exceeds $250. We will then pay the amount of "property damage" in excess of $250, up to the applicable Limit of Insurance for this coverage as listed in Paragraph b. above.

**d. Exclusions**

The following additional exclusions apply to the insurance coverage provided under Care, Custody or Control:

(1) "Property damage" to property at any premises owned, rented, leased, operated or used by you;

(2) "Property damage" to property while in transit;

(3) The cost of repairing or replacing:

    (a) "Your work" defectively or incorrectly done by you; or

    (b) "Your product" manufactured, sold or supplied by you; unless the "property damage" is caused directly by you after delivery of "your product" or completion of "your work" and resulting from a subsequent undertaking.

(4) "Property damage" to property caused by or arising out of the "products-completed operations hazard."

**e. Actual Cost**

In the event of covered "property damage", you shall, if requested by us, replace the property or furnish the labor and materials necessary for repairs thereto at your actual cost, excluding profit or overhead charges.

**5. Water Damage Legal Liability**

**a. Insuring Agreement**

We will pay those sums that the insured becomes legally obligated to pay as damages because of "prop-

erty damage" arising out of water damage to premises that are both rented to and occupied by you.

**b. Limits of Insurance**

The most we will pay under Water Damage Legal Liability for all "property damage" arising out of any one "occurrence" is $25,000.

**c. Exclusions**

The following additional exclusions apply to the insurance coverage provided under Water Damage Legal Liability:

(1) "Property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

(2) "Property damage" caused by or resulting from any of the following:

    (a) Wear and tear;

    (b) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

    (c) Smog or smoke;

    (d) Settling, cracking, shrinking or expansion;

    (e) Insects, birds, rodents or other animals; or

    (f) Mechanical breakdown, including rupture or bursting caused by centrifugal force.

(3) "Property damage" caused directly or indirectly by any of the following:

    (a) Any earth movement, such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting;

    (b) Volcanic eruption, explosion or effusion;

    (c) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

    (d) Mudslide or mudflow;

(e) Water that backs up from a sewer or drain; or

(f) Water under the ground surface pressing on or flowing or seeping through:

    (i) Foundations, walls, floors or paved surfaces;

    (ii) Basements, whether paved or not, or

    (iii) Doors, windows or other openings.

(4) "Property damage" caused by or resulting from any of the following:

(a) Water that leaks or flows from any plumbing, heating, air conditioning or fire protection system caused by or resulting from freezing, unless:

    (i) You make a reasonable effort to maintain heat in the building or structure; or

    (ii) You drain the equipment and shut off the water supply if the heat is not maintained.

(5) "Property damage" to

(a) Plumbing, heating, air conditioning, fire protection systems, or other equipment or appliances; or

(b) The interior of the premises caused by or resulting from rain or snow, whether driven by wind or not.

The following are added to SECTION II - LIABILITY, C. Who Is An Insured

3. Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company and over which you maintain ownership or majority interest, will qualify as an insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Paragraph A.1. Business Liability does not apply to:

(1) "Bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

(2) "Personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named insured in the Declarations.

4. For Business Liability only, the owner of any building leased to you, but only if the building owner is a shareholder in your corporation or a partner in your partnership or member in your limited liability company insured in this policy, and only with respect to liability arising out of the ownership maintenance or use of that part of the premises leased to you. However, this insurance does not apply:

a. To any "occurrence" or offense which takes place after you cease to be a tenant in the premises; or

b. To structural alterations, new construction or demolition operations performed by or on behalf of the building owner.

c. "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for a state or a municipality; or

d. "Bodily injury" or "property damage" included within the "products-completed" operations hazard.

5. Any person or organization with respect to their liability as a concessionaire trading under your name with your permission.

When you have agreed in writing in a contract or agreement that such person(s) or organization(s) be named as an additional insured on your policy. Such person(s) or organization(s) is an insured only with respect to their liability as required in the contract or agreement.

The coverage afforded to the Additional insured is solely limited to liability specifically resulting from the conduct of the Named Insured, which may be imputed to the Additional insured.

A person's or organization's status as an Additional Insured under this endorsement ends when their contract or agreement with you ends.

Case 3:15-cv-00244-TAV-HBG Document 1-1 Filed 06/10/15 Page 33 of 162 PageID #: 35

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed" operations hazard.

The following is added to paragraph **b.** of **SECTION II - LIABILITY,** D. Liability and Medical Expense Limits of Insurance,

    **4.** Aggregate Limits

This limitation applies separately to each "location" owned by or rented to you. "Location" means premises involving the same or connecting lots or whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

Items **e.** and **f.** are added to E. Liability And Medical Expenses General Conditions, **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** as follows:

**e.** The requirement in Condition 2.a. applies only when the "occurrence" or offense is known to:

    **(1)** You, if you are an individual;

    **(2)** A partner, if you are a partnership; or

    **(3)** An "executive officer" or insurance manager, if you are a corporation.

    **(4)** A manager, if you are a limited liability company.

**f.** The requirement in Condition 2. b. will not be breached unless the breach occurs after such claim or "suit" is known to:

**(1)** You, if you are an individual;

**(2)** A partner, if you are a partnership, or

**(3)** An "executive officer" or insurance manager, if you are a corporation.

**(4)** A manager, if you are a limited liability company.

The following is added to **E. Liability And Medical Expenses General Conditions:**

    **5.** Representations

    By accepting this policy, you agree:

        **a.** The statements in the Declarations are accurate and complete;

        **b.** Those statements are based upon representations you made to us; and

        **c.** We have issued this policy in reliance upon your representations.

        **d.** Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy, provided such failure to disclose all hazards or prior "occurrences" is not intentional.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BRANDS AND LABELS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

A. If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

1. Stamp the word "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

2. Remove the brands or labels, if doing so will not physically damage the merchandise. You must relabel the merchandise or is containers to comply with the law.

B. We will pay reasonable costs you incur to perform the activity described in A.1. or A.2. above. But the total we pay for these costs and the value of the damaged property will not exceed the applicable Limit of Insurance on such property.

© Insurance Services Office, Inc., 2009

BP 14 10 01 10

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - VENDORS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| |
|---|
| A. Name Of Additional Insured Person(s) Or Organization(s) (Vendor): |
| B. Your Products: |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **C. Who Is An Insured** in **Section II - Liability**:

3.  Any person(s) or organization(s) (referred to below as vendor) shown in the Schedule is also an additional insured, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

a.  The insurance afforded the vendor does not apply to:

(1)  "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement.

(2)  Any express warranty unauthorized by you;

(3)  Any physical or chemical change in the product made intentionally by the vendor;

(4)  Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

(5)  Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to

make in the usual course of business, in connection with the distribution or sale of the products;

(6)  Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

(7)  Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

(8)  "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

(1)  The exceptions contained in Sub-Paragraphs **(4)** or **(6)**; or

(2)  Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

b.  This insurance does not apply to any insured person or organization from whom you have acquired such products, or any ingredient, part or container entering into, accompanying or containing such products.

© ISO Properties, Inc., 2004                                    **BP 04 47 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UTILITY SERVICES - DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Prem. No. | Bldg. No. | Utility Services Limit Of Insurance | Water Supply Property (Check If Applies) | Communication Supply Property | Power Supply Property |
|---|---|---|---|---|---|
| | | | | Enter Either "Includes" Or "Not Includes" Overhead Transmission Lines (If Applicable) | |
| | | $ | | | |
| Covered Property: | | | | | |
| | | $ | | | |
| Covered Property: | | | | | |
| | | $ | | | |
| Covered Property: | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

The coverage provided by this endorsement is subject to the provisions of Section I - Property, including Paragraph D. Deductibles, except as provided below.

**A.** The following is added to Paragraph **A. Coverage:**

We will pay for loss of or damage to Covered Property described in the Schedule, caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the property described in Paragraph **C.** of this endorsement if such property is indicated by an "X" in the Schedule.

**B.** Exception

Coverage under this endorsement for loss or damage to Covered Property does not apply to loss or damage to "electronic data", including destruction or corruption of "electronic data".

**C.** Utility Services

1. Water Supply Services, meaning the following types of property supplying water to the described premises:

    **a.** Pumping stations; and

    **b.** Water mains.

2. Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

    **a.** Communication transmission lines, including optic fiber transmission lines;

    **b.** Coaxial cables; and

    **c.** Microwave radio relays except satellites.

    It does not include overhead transmission lines unless indicated in the Schedule.

3. Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

    **a.** Utility generating plants;

    **b.** Switching stations;

    **c.** Substations;

    **d.** Transformers; and

    **e.** Transmission lines.

Case 3:15-cv-00244-TAV-HBG   Document 1-1   Filed 06/10/15   Page 37 of 162   PageID #: 39

It does not include overhead transmission lines unless indicated in the Schedule.

**D.** Paragraph **C. Limits Of Insurance** is replaced by the following:

If a Utility Services Limit Of Insurance is shown in the Schedule, such limit is part of, not in addition to, the Limit Of Insurance stated in the Declarations as applicable to the Covered Property.

If no Limit Of Insurance is shown for Utility Services, coverage under this endorsement is subject to the applicable Limit Of Insurance on the Covered Property as shown in the Declarations. But this Utility Services Endorsement does not increase the applicable Limit Of Insurance.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED -
# MORTGAGEE, ASSIGNEE, OR RECEIVER

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| |
|---|
| **A.  Name Of Person Or Organization:** |
| **B.  Designation Of Premises:** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **C. Who Is An Insured** in **Section II - Liability.**

3.   The person or organization shown in the Schedule is also an insured, but only with respect to liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and as shown in the Schedule.

This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

© ISO Properties, Inc., 2004                                          **BP 04 09** 01 06

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# FUNGI OR BACTERIA EXCLUSION (LIABILITY)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to **Section II - Liability:**

A. The following exclusion is added to Paragraph **B.1., Exclusions - Applicable To Business Liability Coverage:**

    t. **Fungi Or Bacteria**

        (1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

        (2) Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

        This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B. The following definition is added Paragraph **F. Liability And Medical Expenses Definitions:**

    1. "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

© ISO Properties, Inc., 2004

BP 05 77 01 06

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# TENNESSEE CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section III - Common Policy Conditions** is amended as follows:

A. Paragraph **A. Cancellation** is amended as follows:

1. Paragraph **2.a.** does not apply.

2. Paragraph **5.** is replaced by the following:

    5. If this policy is cancelled, we will send the first Named Insured any premium refund due.

    The refund will be pro rata if:

    a. We cancel; or

    b. The policy is cancelled at the request of a premium finance company that has financed this policy under a premium finance agreement.

    The refund may be less than pro rata if the first Named Insured cancels the policy.

    The cancellation will be effective even if we have not made or offered a refund.

3. The following paragraph is added:

    7. **Cancellation Of Policies In Effect For 60 Days Or More.**

    If this policy has been in effect for **60** days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

    a. Nonpayment of premium, including any additional premium, calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

    b. Your conviction of a crime increasing any hazard insured against;

    c. Discovery of fraud or material misrepresentation on the part of either of the following:

        (1) You or your representative in obtaining this insurance; or

        (2) You in pursuing a claim under this policy;

    d. Failure to comply with written loss control recommendations;

    e. Material change in the risk which increases the risk of loss after we issued or renewed insurance coverage;

    f. Determination by the insurance commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of Tennessee or any other state;

    g. Your violation or breach of any policy terms or conditions; or

    h. Other reasons that are approved by the insurance commissioner.

    Notice of cancellation will state the reason for cancellation.

B. The following is added to Paragraph **I. Premiums.**

    5. Whenever an insurance policy which is financed with a premium finance company is cancelled, the insurer shall return within 30 days after the effective date of the cancellation, whatever gross unearned premiums are due under the insurance policy directly to the premium finance company for the account of the first Named Insured.

D. The following paragraph is added:

M. **Nonrenewal**

    1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, at least 60 days before the expiration date unless:

        a. We have offered to issue a renewal policy; or

        b. You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

    2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

BP 02 02 07 02

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# TENNESSEE CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section III - Common Policy Conditions** is amended as follows:

A. Paragraph **A. Cancellation** is amended as follows:

1. Paragraph **2.a.** does not apply.

2. Paragraph **5.** is replaced by the following:

   5. If this policy is cancelled, we will send the first Named Insured any premium refund due.

      The refund will be pro rata if:

      a. We cancel; or

      b. The policy is cancelled at the request of a premium finance company that has financed this policy under a premium finance agreement.

      The refund may be less than pro rata if the first Named Insured cancels the policy.

      The cancellation will be effective even if we have not made or offered a refund.

3. The following paragraph is added:

   7. **Cancellation Of Policies In Effect For 60 Days Or More.**

      If this policy has been in effect for **60** days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

      a. Nonpayment of premium, including any additional premium, calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

      b. Your conviction of a crime increasing any hazard insured against;

      c. Discovery of fraud or material misrepresentation on the part of either of the following:

         (1) You or your representative in obtaining this insurance; or

         (2) You in pursuing a claim under this policy;

   d. Failure to comply with written loss control recommendations;

   e. Material change in the risk which increases the risk of loss after we issued or renewed insurance coverage;

   f. Determination by the insurance commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of Tennessee or any other state;

   g. Your violation or breach of any policy terms or conditions; or

   h. Other reasons that are approved by the insurance commissioner.

      Notice of cancellation will state the reason for cancellation.

B. The following is added to Paragraph **I. Premiums.**

   5. Whenever an insurance policy which is financed with a premium finance company is cancelled, the insurer shall return within 30 days after the effective date of the cancellation, whatever gross unearned premiums are due under the insurance policy directly to the premium finance company for the account of the first Named Insured.

D. The following paragraph is added:

   M. **Nonrenewal**

   1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, at least 60 days before the expiration date unless:

      a. We have offered to issue a renewal policy; or

      b. You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

   2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties Inc., 2001

Case 3:15-cv-00244-TAV-HBG Document 1-1 Filed 06/10/15 Page 42 of 162 PageID #: 44

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# FINE ARTS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

| ITEM | LIMIT OF INSURANCE |
|---|---|
| | |
| | |
| | |
| ☐ Coverage for Breakage provided | |
| Deductible amount is $500 unless otherwise stated: | |

(If no entry appears above, the information required to complete this endorsement will be found in the Declarations as applicable to this endorsement)

A. The following is added to Paragraph **A.5. Additional Coverages** under **Section I - Property**:

1. We will pay for direct loss of or damage to Fine Arts, whether owned by:

    a. You; or

    b. Others, and in your care, custody or control.

2. Fine arts includes, but is not limited to, antiques, paintings, etchings, drawings, tapestries, sculptures and fragile property such as porcelains, china and marble.

3. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property. The amount payable under this Additional Coverage is additional insurance over the insurance available for Business Personal Property.

    The most we will pay for loss in any one occurrence is the applicable Limit of Insurance specified in the Declarations.

4. The value of fine arts will be the least of the following amounts:

    a. The actual cash value of that property at the time of loss;

    b. The cost of reasonably restoring that property to its condition immediately before loss; or

    c. The cost of replacing that property with substantially identical property.

    4. In the event of loss, the value of property will be determined as of the time of loss.

B. The following is added to Paragraph **B. Exclusions** under **Section I - Property**:

    We will not pay for a loss caused by or resulting from breakage, bric-a-brac, porcelains, and similar fragile articles, unless caused by fire, lightning, aircraft, theft and/or attempted theft, cyclone, tornado, windstorm, earthquake, flood, explosion, malicious damage or collision, derailment or overturn of conveyance unless coverage for Breakage is indicated by an X in the Declarations.

C. The following are added to Paragraph **E. Property Loss Conditions** under **Section I - Property**:

    1. In case of loss to any part of a pair or set we will:

        a. Repair or replace any part to restore the pair or set to its value before the loss; or

        b. Pay the difference between the value of the pair or set before and after the loss.

    2. You must arrange for fine arts to be packed and unpacked by competent packers.

Includes Copyrighted Material of Insurance
Services Office, Inc., with its permission.

BPW 02 07 01 07

# BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

In Section II - Liability, the word "insured" means any person or organization qualifying as such under Paragraph C. Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph H. Property Definitions in Section I - Property and Paragraph F. Liability And Medical Expenses Definitions in Section II - Liability.

## SECTION I - PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1. **Covered Property**

   Covered Property includes Buildings as described under Paragraph a. below, Business Personal Property as described under Paragraph b. below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph 2. Property Not Covered.

   a. Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

      (1) Completed additions;

      (2) Fixtures, including outdoor fixtures;

      (3) Permanently installed:

         (a) Machinery; and

         (b) Equipment;

      (4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

      (5) Personal property owned by you that is used to maintain or ser-

vice the buildings or structures or the premises, including:

   (a) Fire extinguishing equipment;

   (b) Outdoor furniture;

   (c) Floor coverings; and

   (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(6) If not covered by other insurance:

   (a) Additions under construction, alterations and repairs to the buildings or structures;

   (b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

   b. Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described premises, including:

      (1) Property you own that is used in your business;

      (2) Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph E.5.d.(3)(b);

      (3) Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

         (a) Made a part of the building or structure you occupy but do not own; and

         (b) You acquired or made at your expense but cannot legally remove;

      (4) Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph 1.b.(2); and

(5) Exterior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your custody or control.

### 2. Property Not Covered

Covered Property does not include:

a. Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

b. "Money" or "securities" except as provided in the:

    (1) Money And Securities Optional Coverage; or

    (2) Employee Dishonesty Optional Coverage;

c. Contraband, or property in the course of illegal transportation or trade;

d. Land (including land on which the property is located), water, growing crops or lawns;

e. Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants, all except as provided in the:

    (1) Outdoor Property Coverage Extension; or

    (2) Outdoor Signs Optional Coverage;

f. Watercraft (including motors, equipment and accessories) while afloat;

g. Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

h. "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

i. "Electronic data", except as provided under Additional Coverages - Electronic Data. This Paragraph i. does not apply to your "stock" of prepackaged software.

j. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

### 3. Covered Causes Of Loss

Risks of direct physical loss unless the loss is:

a. Excluded in Paragraph B. Exclusions in Section I; or

b. Limited in Paragraph 4. Limitations in Section I.

### 4. Limitations

a. We will not pay for loss of or damage to:

    (1) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

    (2) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

    (3) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

    (4) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

    (5) The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        (a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

b. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

(1) Animals, and then only if they are killed or their destruction is made necessary.

(2) Fragile articles such as glassware, statuary, marble, chinaware and procelain, if broken. This restriction does not apply to:

(a) Glass that is part of the exterior or interior of a building or structure;

(b) Containers of property held for sale; or

(c) Photographic or scientific instrument lenses.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown:

(1) $2,500 for furs, fur garments and garments trimmed with fur.

(2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

(3) $2,500 for patterns, dies, molds and forms.

5. **Additional Coverages**

a. **Debris Removal**

(1) Subject to Paragraphs (3) and (4), we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water; or

(b) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to Paragraph (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

(4) We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs (4)(a) and/or (4)(b) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

**(5) Examples**

**Example #1**

| | | |
|---|---|---|
| Limit of Insurance | $ | 90,000 |
| Amount of Deductible | $ | 500 |
| Amount of Loss | $ | 50,000 |
| Amount of Loss Payable | $ | 49,500 |
| | ($50,000 - $500) | |
| Debris Removal Expense | $ | 10,000 |
| Debris Removal Expense | | |
| Payable | $ | 10,000 |

($10,000 is 20% of $50,000)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example #2**

| | | |
|---|---|---|
| Limit of Insurance | $ | 90,000 |
| Amount of Deductible | $ | 500 |
| Amount of Loss | $ | 80,000 |
| Amount of Loss Payable | $ | 79,500 |
| | ($80,000 - $500) | |
| Debris Removal Expense | $ | 30,000 |
| Debris Removal Expense | | |
| Payable | | |
| Basic Amount | $ | 10,500 |
| Additional Amount | $ | 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows:

$80,000 ($79,500 = 500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph

**(4).** Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500, unless a different limit is shown in the Declarations, for your liability for fire department service charges:

**(1)** Assumed by contact or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage - Collapse applies only to an abrupt collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

**(1)** For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

(a) Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

(b) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

(c) Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

(d) Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

    (i) A cause of loss listed in Paragraph (2)(a) or (2)(b);

    (ii) One or more of the "specified causes of loss";

    (iii) Breakage of building glass;

    (iv) Weight of people or personal property; or

    (v) Weight of rain that collects on a roof.

(3) This Additional Coverage - Collapse does **not** apply to:

(a) A building or any part of a building that is in danger of falling down or caving in;

(b) A part of a building that is standing, even if it has separated from another part of the building; or

(c) A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(4) With respect to the following property:

(a) Awnings;

(b) Gutters and downspouts;

(c) Yard fixtures;

(d) Outdoor swimming pools;

(e) Piers, wharves and docks;

(f) Beach or diving platforms or appurtenances;

(g) Retaining walls; and

(h) Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraphs (2)(a) through (2)(d), we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

(5) If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

(a) The collapse of personal property was caused by a cause of loss listed in Paragraphs (2)(a) through (2)(d) of this Additional Coverage;

(b) The personal property which collapses is inside a building; and

(c) The property which collapses is not of a kind listed in Paragraph (4) above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph (5) does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

(6) This Additional Coverage - Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(7) This Additional Coverage - Collapse will not increase the Limits of Insurance provided in this policy.

**(8)** The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

**(1) Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(i)** The portion of the building which you

rent, lease or occupy; and

**(ii)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

**(c)** Business Income means the:

**(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

**(ii)** Continuing normal operating expenses incurred, including payroll.

**(d)** Ordinary payroll expenses:

**(i)** Means payroll expenses for all your employees except:

    **i.** Officers;

    **ii.** Executives;

    **iii.** Department Managers;

    **iv.** Employees under contract; and

v. Additional Exemptions shown in the Declarations as:

- Job Classifications; or

- Employees.

(ii) Include:

i. Payroll;

ii. Employee benefits, if directly related to payroll;

iii. FICA payments you pay;

iv. Union dues you pay; and

v. Workers' compensation premiums.

(2) **Extended Business Income**

(a) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(i) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

(ii) Ends on the earlier of:

i. The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

ii. 30 consecutive days after the date determined in Paragraph (a)(i) above, unless a greater number of consecutive days

is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

(b) Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part of or all of the described premises is rendered untenantable, if coverage for Business Income applies.

(4) This Additional Coverage is not subject to the Limits of Insurance of Section I - Property.

g. **Extra Expense**

(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a) The portion of the building which you rent, lease or occupy; and

(b) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(2) Extra Expense means expense incurred:

   (a) To avoid or minimize the suspension of business and to continue "operations":

      (i) At the described premises; or

      (ii) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

   (b) To minimize the suspension of business if you cannot continue "operations".

   (c) To:

      (i) Repair or replace any property; or

      (ii) Research, replace or restore the lost information on damaged "valuable papers and records";

      to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage f. Business Income.

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

   (a) The partial slowdown or complete cessation of your business activities; or

   (b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

(4) We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Cov-

erage is not subject to the Limits of Insurance of Section I - Property.

**h. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**i. Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

    (1) Four consecutive weeks after the date of that action; or

    (2) When your Civil Authority coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section I - Property.

**j.  Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

    (1) Money orders issued by any post office, express company or bank that are not paid upon presentation; or

    (2) "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k.  Forgery Or Alteration**

    (1) We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money", that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

    (2) If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

    (3) For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

    (4) The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit of Insurance is shown in the Declarations.

**l.  Increased Cost Of Construction**

    (1) This Additional Coverage applies only to buildings insured on a replacement cost basis.

    (2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs (3) through (9) of this Additional Coverage.

    (3) The ordinance or law referred to in Paragraph (2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

    (4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

        (a) You were required to comply with before the loss, even when the building was undamaged; and

        (b) You failed to comply with.

    (5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

(b) Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet rot or dry rot.

(6) The most we will pay under this Additional Coverage, for each described building insured under Section I - Property, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building is $10,000.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of

Construction is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment Property Loss Condition in Section I - Property do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph (6) of this Additional Coverage, is not subject to such limitation.

m. Business Income From Dependent Properties

(1) We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss to dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit of Insurance is indicated in the Declarations.

(2) We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

(a) Source of materials; or

(b) Outlet for your products.

(3) If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

(4) Dependent property means property owned by others whom you depend on to:

(a) Deliver materials or services to you, or to others for your account. But services does not mean water, communication or power supply services;

(b) Accept your products or services;

(c) Manufacture your products for delivery to your customers under contract for sale; or

(d) Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

(5) The coverage period for Business Income under this Additional Coverage:

(a) Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property; and

(b) Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

(6) The Business Income coverage period, as stated in Paragraph (5), does not include any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

(7) The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

n. Glass Expenses

(1) We will pay for expenses incurred to put up temporary plates or board up openings if repaired or replacement of damaged glass is delayed.

(2) We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

o. Fire Extinguisher Systems Recharge Expense

(1) We will pay:

(a) The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

(b) For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

(2) No coverage will apply if the fire extinguishing system is discharged during installation or testing.

(3) The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

p. **Electronic Data**

(1) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

(2) The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage - Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

q. **Interruption Of Computer Operations**

(1) Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

(2) With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

(a) Coverage under this Additional Coverage - Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

(b) If the Businessowners Coverage form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

(c) The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage - Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

(4) This Additional Coverage - Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in (3) above has not been exhausted.

(5) Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs (1) through (4) of this Additional Coverage.

(6) Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs (1) through (4) of this Additional Coverage.

r. **Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

(1) The coverage described in Paragraphs r.(2) and r.(6) only applies when the "fungi", wet rot or dry rot are the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

(2) We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

(a) Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

(b) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

(c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot are present.

(3) The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

**(4)** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**(5)** The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

**(6)** The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage.

   **(a)** If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   **(b)** If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs

the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the period of restoration), but such coverage is limited to 30 days. The days need not be consecutive.

**6.** **Coverage Extensions**

In addition to the Limits of Insurance of Section I - Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

  **a.** **Newly Acquired Or Constructed Property**

    **(1)** **Buildings**

      If this policy covers Buildings, you may extend that insurance to apply to:

      **(a)** Your new buildings while being built on the described premises; and

      **(b)** Buildings you acquire at premises other than the one described, intended for:

        **(i)** Similar use as the building described in the Declarations; or

        **(ii)** Use as a warehouse.

      The most we will pay for loss or damage under this Extension is $250,000 at each building.

    **(2)** **Business Personal Property**

      If this policy covers Business Personal Property, you may extend that insurance to apply to:

      **(a)** Business Personal Property, including such property that you newly acquire, at any location you acquire;

      **(b)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

(c) Business Personal Property that you newly acquire, located at the described premises.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(3) **Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

b. **Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.

c. **Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

d. **Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees. This extension does not apply to:

(1) Tools or equipment used in your business; or

(2) Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

e. **Valuable Papers And Records**

(1) You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

(2) This Coverage Extension does not apply to:

(a) Property held as samples or for delivery after sale; and

(b) Property in storage away from the premises shown in the Declarations.

(3) The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

(4) Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

(5) Paragraph **B.** Exclusions in Section **I** - Property does not apply to this Coverage Extension except for:

    (a) Paragraph **B.1.c.,** Governmental Action;

    (b) Paragraph **B.1.d.,** Nuclear Hazard;

    (c) Paragraph **B.1.f.,** War And Military Action;

    (d) Paragraph **B.2.f.,** Dishonesty;

    (e) Paragraph **B.2.g.,** False Pretense;

    (f) Paragraph **B.2.m.(2),** Errors Or Omissions; and

    (g) Paragraph **B.3.**

f. **Accounts Receivable**

(1) You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

    (a) All amounts due from your customers that you are unable to collect;

    (b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

    (c) Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

    (d) Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

(2) The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

(3) Paragraph **B.** Exclusions in Section **I** - Property does not apply to this Coverage Extension except for:

    (a) Paragraph **B.1.c.,** Governmental Action;

    (b) Paragraph **B.1.d.,** Nuclear Hazard;

    (c) Paragraph **B.1.f.,** War And Military Action;

    (d) Paragraph **B.2.f.,** Dishonesty;

    (e) Paragraph **B.2.g.,** False Pretense;

    (f) Paragraph **B.3.;** and

    (g) Paragraph **B.6.,** Accounts Receivable Exclusion.

B. **Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

    a. **Ordinance Or Law**

    (1) The enforcement of any ordinance or law:

        (a) Regulating the construction, use or repair of any property; or

        (b) Requiring the tearing down of any property, including the cost of removing its debris.

    (2) This exclusion, Ordinance Or Law, applies whether the loss results from:

(a) An ordinance or law that is enforced even if the property has not been damaged; or

(b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

b. **Earth Movement**

(1) Earthquake, including any earth sinking, rising or shifting related to such event;

(2) Landslide, including any earth sinking, rising or shifting related to such event;

(3) Mine Subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs (1) through (4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust or particulate matter; or

(c) Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

c. **Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

d. **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

e. **Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

(1) Originates away from the described premises; or

(2) Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic data".

f. **War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. **Water**

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these , all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise

caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs (1) through (5), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

h. **Certain Computer-related Losses**

(1) The failure, malfunction or inadequacy of:

(a) Any of the following, whether belonging to any insured or to others:

(i) "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

(ii) "Computer" application software or other "electronic data" as may be described elsewhere in this policy;

(iii) "Computer" operating systems and related software;

(iv) "Computer" networks;

(v) Microprocessors ("computer" chips) not part of any "computer" system; or

(vi) Any other computerized or electronic equipment or components; or

(b) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph (a) above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

(2) Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph (1) above.

However, if excluded loss or damage, as described in Paragraph (1) above results in a "specified cause of loss" under Section I - Property, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph (1)(a) or (1)(b) to correct any deficiencies or change any features.

i. "Fungi", Wet Rot Or Dry Rot

Presense, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

(1) When "fungi", wet rot or dry rot result from fire or lightning; or

(2) To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage with respect to loss or damage by a cause of loss other than fire or lightning.

j. Virus Or Bacteria

(1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(2) However, the exclusion in Paragraph (1) does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion i.

(3) With respect to any loss or damage subject to the exclusion in Paragraph (1), such exclusion supersedes any exclusion relating to "pollutants".

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Electrical Apparatus

Artifically generated electrical, magnetic or electromagnetic energy that damages, disturbs or otherwise interferes with any:

(1) Electrical or electronic wire, device, appliance, system or network; or

(2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

(1) Electrical current, including arcing;

(2) Electrical charge produced or conducted by a magnetic or electromagnetic field;

(3) Pulse of electromagnetic energy; or

(4) Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

(1) An occurrence that took place within 100 feet of the described premises; or

(2) Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

b. Consequential Losses

Delay, loss of use or loss of market.

c. Smoke, Vapor, Gas

Smoke, vapor or gas from agricultural smudging or industrial operations.

### d. Steam Apparatus

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

### e. Frozen Plumbing

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

### f. Dishonesty

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the

Employee Dishonesty Optional Coverage.

### g. False Pretense

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

### h. Exposed Property

Rain, snow, ice or sleet to personal property in the open.

### i. Collapse

(1) Collapse, including any of the following conditions of property or any part of the property:

(a) An abrupt falling down or caving in;

(b) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

(c) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph j.(1)(a) or j.(1)(b).

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

(2) This Exclusion i. does not apply:

(a) To the extent that coverage is provided under the Additional Coverage - Collapse; or

(b) To collapse caused by one or more of the following:

(i) The "specified causes of loss";

(ii) Breakage of building glass;

(iii) Weight of rain that collects on a roof; or

(iv) Weight of people or personal property.

j. **Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

k. **Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

l. **Other Types of Loss**

(1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs (1) through (7) above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified

cause of loss" or building glass breakage.

m. **Errors Or Omissions**

Errors or omissions in:

(1) Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

(2) Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

n. **Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

o. **Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section I - Property.

However, we will pay for direct loss or damage caused by lightning.

p. **Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

3. We will not pay for loss or damage caused by or resulting from any of the following Paragraphs a. through c. But if an excluded cause of loss that is listed in Paragraphs a. through c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. **Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph B.1. above to produce the loss or damage.

b. **Acts Or Decisions**

   Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. **Negligent Work**

   Faulty, inadequate or defective:

   (1) Planning, zoning, development, surveying, siting;

   (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading compaction;

   (3) Materials used in repair, construction, renovation or remodeling; or

   (4) Maintenance;

   of part or all of any property on or off the described premises.

4. **Additional Exclusion**

   The following applies only to the property specified in this Additional Exclusion.

   **Loss Or Damage to Products**

   We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

5. **Business Income And Extra Expense Exclusions**

   a. We will not pay for:

   (1) Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

   (a) Delay in rebuilding, repairing or replacing the property or "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

   (b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

   (2) Any other consequential loss.

   b. With respect to this exclusion, suspension means:

   (1) The partial slowdown or complete cessation of your business activities; and

   (2) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

6. **Accounts Receivable Exclusion**

   The following additional exclusion applies to the Accounts Receivable Coverage Extension:

   We will not pay for:

   a. Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

   This exclusion applies only to the extent of the wrongful giving, taking or withholding.

   b. Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

   c. Any loss or damage that requires any audit or records or any inventory computation to prove its factual existence.

C. **Limits Of Insurance**

   1. The most we will pay for loss or damage in any one occurrence is the applicable Limits of Insurance of Section I - Property shown in the Declarations.

   2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

BP 00 03 01 10
Page 22 of 54

3. The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to the Limits of Insurance of Section I. - Property.

   a. Fire Department Service Charge;

   b. Pollutant Clean-up And Removal;

   c. Increased Cost Of Construction;

   d. Business Income From Dependent Properties;

   e. Electronic Data; and

   f. Interruption Of Computer Operations.

4. **Building Limit - Automatic Increase**

   a. In accordance with Paragraph **C.4.b.**, the Limit of Insurance for Buildings will automatically increase by 8%, unless a different percentage of annual increase is shown in the Declarations.

   b. The amount of increase is calculated as follows:

      (1) Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit by;

         (a) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 7% is .07); or

         (b) .08 if no percentage of annual increase is shown in the Declarations; and

      (2) Multiply the number calculated in accordance with **b.(1)** by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

      Example:

      If:  The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is

$100,00 x .08 x 146 - 365 = $3,200.

5. **Business Personal Property Limit - Seasonal Increase**

   a. Subject to Paragraph **5.b.**, the Limit of Insurance for Business Personal Property is automatically increased by:

      (1) The Business Personal Property - Seasonal Increase percentage shown in the Declarations; or

      (2) 25% if no Business Personal Property - Seasonal Increase percentage is shown in the Declarations;

      to provide for seasonal variances.

   b. The increase described in Paragraph **5.a.** will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is a least 100% of your average monthly values during the lesser of:

      (1) The 12 months immediately preceding the date the loss or damage occurs; or

      (2) The period of time you have been in business as of the date the loss or damage occurs.

D. **Deductibles**

   1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section I - Property.

   2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

      a. Money and Securities;

      b. Employee Dishonesty;

      c. Outdoor Signs; and

      d. Forgery or Alteration.

   But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

3. No deductible applies to the following Additional Coverages:

   a. Fire Department Service Charge;

   b. Business Income;

   c. Extra Expense;

   d. Civil Authority; and

   e. Fire Extinguisher Systems Recharge Expense.

E. **Property Loss Conditions**

   1. **Abandonment**

      There can be no abandonment of any property to us.

   2. **Appraisal**

      If we and you disagree on the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

      a. Pay its chosen appraiser; and

      b. Bear the other expenses of the appraisal and umpire equally.

      If there is an appraisal, we will still retain our right to deny the claim.

   3. **Duties In The Event Of Loss Or Damage**

      a. You must see that the following are done in the event of loss or damage to Covered Property:

         (1) Notify the police if a law may have been broken.

         (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

         (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

         (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of In-

surance of Section I - Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

         (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

         (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

            Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

         (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

         (8) Cooperate with us in the investigation or settlement of the claim.

         (9) Resume all or part of your "operations" as quickly as possible.

      b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

   4. **Legal Action Against Us**

      No one may bring a legal action against us under this insurance unless:

      a. There has been full compliance with all of the terms of this insurance; and

      b. The action is brought within two years after the date on which the direct physical loss or damage occurred.

   5. **Loss Payment**

      In the event of loss or damage covered by this policy:

a. At our option, we will either:

   (1) Pay the value of lost or damaged property;

   (2) Pay the cost of repairing or replacing the lost or damaged property;

   (3) Take all or any part of the property at an agreed or appraised value; or

   (4) Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph d.(1)(e) below.

b. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

c. We will not pay you more than your financial interest in the Covered Property.

d. Except as provided in Paragraphs (2) through (7) below, we will determine the value of Covered Property as follows:

   (1) At replacement cost without deduction for depreciation, subject to the following:

     (a) If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

       (i) The Limit of Insurance under Section I - Property that applies to the lost or damaged property;

       (ii) The cost to replace, on the same premises, the lost or damaged property with other property:

         i. Of comparable material and quality; and

         ii. Used for the same purpose; or

       (iii) The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

       If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

     (b) If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

       (i) The actual cash value of the lost or damaged property; or

       (ii) A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement.

     (c) You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

     (d) We will not pay on a replacement cost basis for any loss or damage:

       (i) Until the lost or damaged property is actually repaired or replaced; and

       (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraph d.(1)(a) and d.(1)(b) above whether or not the actual repair or replacement is complete.

(e) The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

(2) If the Actual Cash Value - Buildings option applies, as shown in the Declarations, Paragraph (1) above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

(3) The following property at actual cash value:

(a) Used or secondhand merchandise held in storage or for sale;

(b) Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

(c) Household contents, except personal property in apartments or rooms furnished by you as landlord;

(d) Manuscripts; and

(e) Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

(4) Glass at the cost of replacement with safety glazing material if required by law.

(5) Tenants' Improvements and Betterments at:

(a) Replacement cost if you make repairs promptly.

(b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(ii) Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(c) Nothing if others pay for repairs or replacement.

(6) Applicable only to the Optional Coverages:

(a) "Money" at its face value; and

(b) "Securities" at their value at the close of business on the day the loss is discovered.

(7) Applicable only to Accounts Receivable:

(a) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

(i) We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

(ii) We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

(b) The following will be deducted from the total amount of accounts receivable, however that amount is established:

    (i) The amount of the accounts for which there is no loss or damage;

    (ii) The amount of the accounts that you are able to reestablish or collect;

    (iii) An amount to allow for probable bad debts that you are normally unable to collect; and

    (iv) All unearned interest and service charges.

e. Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy; and

    (1) We have reached agreement with you on the amount of loss; or

    (2) An appraisal award has been made.

h. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not

to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

6. **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section I - Property.

7. **Resumption Of Operations**

We will reduce the amount of your:

a. Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

b. Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

8. **Vacancy**

a. **Description Of Terms**

    (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **(a)** and **(b)** below:

        (a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building its vacant unless at least 31% of its total square footage is:

    **(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

    **(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

    **(a)** Vandalism;

    **(b)** Sprinkler leakage, unless you have protected the system against freezing;

    **(c)** Building glass breakage;

    **(d)** Water damage;

    **(e)** Theft; or

    **(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in Paragraphs (1)(a) through (1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

## F. Property General Conditions

**1. Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term "mortgageholder" includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive the loss payment if the mortgageholder:

    **(1)** Pays any premium due under this policy at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

    **(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

    **(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

    **(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

  **g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least **10** days before the expiration date of this policy.

**3. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under Section I - Property:

  **a.** We cover loss or damage commencing:

    **(1)** During the policy period shown in the Declarations; and

    **(2)** Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

  **b.** The coverage territory is:

    **(1)** The United States of America (including its territories and possessions);

    **(2)** Puerto Rico; and

    **(3)** Canada.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

**1. Outdoor Signs**

  **a.** We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

    **(1)** Owned by you; or

    **(2)** Owned by others but in your care, custody or control.

  **b.** Paragraph **A.3.**, Covered Causes Of Loss, and Paragraph **B.**, Exclusions in Section I - Property, do not apply to this Optional Coverage, except for:

    **(1)** Paragraph **B.1.c.**, Governmental Action;

    **(2)** Paragraph **B.1.d.**, Nuclear Hazard; and

    **(3)** Paragraph **B.1.f.**, War And Military Action.

  **c.** We will not pay for loss or damage caused by or resulting from:

    **(1)** Wear and tear;

    **(2)** Hidden or latent defect;

    **(3)** Rust;

    **(4)** Corrosion; or

    **(5)** Mechanical breakdown.

  **d.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

  **e.** The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**2. Money And Securities**

  **a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

    **(1)** Theft, meaning any act of stealing;

    **(2)** Disappearance; or

    **(3)** Destruction.

  **b.** In addition to the Limitations and Exclusions applicable to Section I - Property, we will not pay for loss:

    **(1)** Resulting from accounting or arithmetical errors or omissions;

    **(2)** Due to the giving or surrendering of property in any exchange or purchase; or

    **(3)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

  **c.** The most we will pay for loss in any one occurrence is:

    **(1)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

(a) In or on the described premises; or

(b) Within a bank or savings institution; and

(2) The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

d. All loss:

(1) Caused by one or more persons; or

(2) Involving a single act or series of related acts;

is considered one occurrence.

e. You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

3. **Employee Dishonesty**

a. We will pay for direct loss or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

(1) Cause you to sustain loss or damage; and also

(2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

(a) Any employee; or

(b) Any other person or organization.

b. We will not pay for loss or damage:

(1) Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

(2) Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph a.), "managers" or directors:

(a) Whether acting alone or in collusion with other persons; or

(b) While performing services for you or otherwise.

(3) The only proof of which as to its existence or amount is:

(a) An inventory computation; or

(b) A profit and loss computation.

c. The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

d. All loss or damage:

(1) Caused by one or more persons; or

(2) Involving a single act or series of acts;

is considered one occurrence.

e. If any loss is covered:

(1) Partly by this insurance; and

(2) Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

f. This Optional Coverage is cancelled as to any employee immediately upon discovery by:

(1) You; or

(2) Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

g. We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

h. If you (or any predecessors in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

   (1) This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

   (2) The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

i. The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

   (1) This Optional Coverage as of its effective date; or

   (2) The prior insurance had it remained in effect.

j. With respect to the Employee Dishonesty Optional Coverage in Paragraph **G.3.**, employee means:

   (1) Any natural person:

      (a) While in your service or for 30 days after termination of service;

      (b) Who you compensate directly by salary, wages or commissions; and

      (c) Who you have the right to direct and control while performing services for you;

   (2) Any natural person who is furnished temporarily to you:

      (a) To substitute for a permanent employee as defined in Paragraph **(1)** above, who is on leave; or

      (b) To meet seasonal or short-term work load conditions;

   (3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not

mean a temporary employee as defined in Paragraph **(2)** above;

   (4) Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

   (5) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

   But employee does not mean:

   (1) Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

   (2) Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

4. **Equipment Breakdown Protection Coverage**

a. We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

   Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

   (1) Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

   (2) Leakage at any value, fitting, shaft seal, gland packing, joint or connection;

   (3) Damage to any vacuum tube, gas tube, or brush; or

   (4) The functioning of any safety or protective device.

b. Paragraphs **A.4.a.(1)** and **A.4.a.(2)**, Limitations, do not apply to this Optional Coverage.

c. With respect to the coverage provided by this Optional Coverage, the following exclusions in Paragraph **B. Exclusions** do not apply:

Case 3:15-cv-00244-TAV-HBG   Document 1-1   Filed 06/10/15   Page 74 of 162   PageID #: 76

(1) Paragraph **B.2.a. Electrical Apparatus;**

(2) Paragraph **B.2.d. Steam Apparatus;** and

(3) Paragraph **B.2.l.(6) Mechanical Breakdown.**

d. With respect to the coverage provided by this Optional Coverage, Paragraph **G.1.c.(5)** of the **Outdoor Sign Optional Coverage** does not apply.

e. If a dollar deductible is shown in the Declarations for this Optional Coverage, we will first subtract the applicable deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

If no optional deductible is chosen for this Optional Coverage, the Property Deductible shown in the Declarations applies.

f. With respect to **Additional Coverages 5.f. Business Income** and **5.g. Extra Expense,** if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as time deductible) is amended for this Optional Coverage as shown in the Declarations, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the time deductible in the Declarations immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean 24 consecutive hours.

As respects the coverage provided by this Optional Coverage, any time deductible shown in the Declarations for Equipment Breakdown Protection Coverage supersedes any time deductible otherwise applicable to the Business Income coverage provided by this policy.

g. With respect to the coverage provided by this Optional Coverage, Paragraph **H. Property Definitions** is amended as follows:

1. "Computer" means:

   a. Programmable electronic equipment that is used to store, retrieve and process data; and

   b. Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

   "Computer" includes those used to operate production type machinery or equipment.

h. Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may suspend coverage provided by this Optional Coverage for loss from a mechanical breakdown or electrical failure to that presure, mechanical or electrical machinery and equipment.

However, coverage provided by this Optional Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our representatives to no longer exist.

We may suspend or reinstate this Optional coverage by mailing or delivering a written notification regarding the suspension or reinstatement to:

(1) Your last known address; or

(2) The address where the pressure, mechanical or electrical machinery and equipment is located.

This notification will indicate the effective date of the suspension or reinstatement.

If the coverage provided by this Optional Coverage is not reinstated, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

## H. Property Definitions

1. "Computer" means:

   a. Programmable electronic equipment that is used to store, retrieve and process data; and

   b. Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

   "Computer" does not include those used to operate production type machinery or equipment.

Case 3:15-cv-00244-TAV-HBG   Document 1-1   Filed 06/10/15   Page 75 of 162   PageID #: 77

2. "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

3. "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

4. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

5. "Manager" means a person serving in a directorial capacity for a limited liability company.

6. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

7. "Money" means:

   a. Currency, coins and bank notes in current use and having a face value; and

   b. Travelers checks, register checks and money orders held for sale to the public.

8. "Operations" means your business activities occurring at the described premises.

9. "Period of restoration":

   a. Means the period of time that:

      (1) Begins:

         (a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

         (b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

      (2) Ends on the earlier of:

         (a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

         (b) The date when business is resumed at a new permanent location.

   b. Does not include any increased period required due to the enforcement of any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

10. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

11. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

    a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    but does not include "money".

12. "Specified causes of loss" means the following:

    Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from the fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss of or damage to:

   **(1)** Personal property in the open; or

   **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**13.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**14.** "Valuable papers and records" means inscribed, printed or written:

   **a.** Documents;

   **b.** Manuscripts; and

   **c.** Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" or "securities".

## SECTION II - LIABILITY

**A. Coverages**

**1. Business Liability**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any

"occurrence" or any offense and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** - Liability And Medical Expenses Limits Of Insurance in Section II - Liability; and

   **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension - Supplementary Payments.

   **b.** This insurance applies:

   **(1)** To "bodily injury" and "property damage" only if:

      **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

   **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1) Reports all, or any part, of the "bodily injury" or "property damage to us or any other insurer;

   (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   (3) Becomes aware by other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

f. **Coverage Extension - Supplementary Payments**

   (1) We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

      (a) All expenses we incur.

      (b) Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

      (c) The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

      (d) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

      (e) All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

      (f) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

      (g) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

      These payments will not reduce the limit of liability.

   (2) If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

      (a) The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

      (b) This insurance applies to such liability assumed by the insured;

      (c) The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

(d) The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

(e) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

(f) The indemnitee:

(i) Agrees in writing to:

    i. Cooperate with us in the investigation, settlement or defense of "suit";

    ii. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

    iii. Notify any other insurer whose coverage is available to the indemnitee; and

    iv. Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(ii) Provides us with written authorization to:

    i. Obtain records and other information related to the "suit"; and

    ii. Conduct and control the defense of the indemnitee in such "suit".

(3) So long as the conditions in Paragraph (2) are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph B.1.b.(2) Exclusions in Section II - Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

(a) We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

(b) The conditions set forth above, or the terms of the agreement described in Paragraph (2)(f) above are no longer met.

2. **Medical Expenses**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section II - Liability. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

1. **Applicable To Business Liability Coverage**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   (1) That the insured would have in the absence of the contract or agreement; or

   (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

      (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

      (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   c. **Liquor Liability**

   "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

   (1) Causing or contributing to the intoxication of any person;

   (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   (3) Any statue, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

   d. **Workers' Compensation And Similar Laws**

   Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

   e. **Employer's Liability**

   "Bodily injury" to:

   (1) An "employee" of the insured arising out of and in the course of:

      (a) Employment by the insured; or

      (b) Performing duties related to the conduct of the insured's business; or

   (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

   This exclusion applies:

   (1) Whether the insured may be liable as an employer or in any other capacity; and

   (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

   This exclusion does not apply to liability assumed by the insured under an "insured contract".

   f. **Pollution**

   (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

    (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured. .

This exclusion does not apply to :

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 51 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or other motor vehicle registration law where it is licensed or principally garaged; or

(b) The operation of any of the following machinery or equipment:

(i) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(ii) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports,

surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

(4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

(5) Any health or therapeutic service treatment, advice or instruction;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services; and

(9) Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

**k. Damage To Property**

"Property damage" to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D. Liability And Medical Expenses Limit Of Insurance** in **Section II - Liability**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(5)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

Case 3:15-cv-00244-TAV-HBG   Document 1-1   Filed 06/10/15   Page 84 of 162   PageID #: 86

(6) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(7) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(8) Committed by an insured whose business is:

    (a) Advertising, broadcasting, publishing or telecasting;

    (b) Designing or determining content of websites for others; or

    (c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under Paragraph F. Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

(9) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

(10) With respect to any loss, cost or expense arising out of any:

    (a) Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants".

(11) Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

(12) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(13) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

q. Electronic Data

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

r. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

s. Recording And Distribution Of Material Or Information In Violation Of Law

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions c., d., e., f., g., h., i., k., l., m., n. and o in Section II - Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D. Liability And Medical Expenses Limits of Insurance in Section II - Liability.**

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

a. To any insured, except "volunteer workers".

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

f. Included within the "products-completed operations hazard".

g. Excluded under Business Liability Coverage.

**3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage - Nuclear Energy Liability Exclusion**

This insurance does not apply:

a. Under Business Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

(a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b. Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting form the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

c. Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

(1) The "nuclear material":

(a) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

(b) Has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

d. As used in this exclusion:

(1) "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(2) "Hazardous properties" include radioactive, toxic or explosive properties;

(3) "Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for:

(i) Separating the isotopes of uranium or plutonium;

(ii) Processing or utilizing "spent fuel"; or

(iii) Handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams

of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(4) "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(5) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(6) "Property damage" includes all forms of radioactive contamination of property;

(7) "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(8) "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(9) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

(10) "Waste" means any waste material:

(a) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

(b) Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs (a) and (b) of the definition of "nuclear facility".

## C. Who Is An Insured

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the con-duct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (a) or (b); or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

1. The Limits of Insurance of Section II - Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The most we will pay for the sum of all damages because of all:

   a. "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

   b. "Personal and advertising injury" sustained by any one person or organization;

   is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

3. The most we will pay under the Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

4. Aggregate Limits

   The most we will pay for:

   a. All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

   b. All:

      (1) "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

      (2) Plus medical expenses;

      (3) Plus all "personal and advertising injury" caused by offenses committed;

   is twice the Liability and Medical Expenses limit.

   Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

   The Limits of Insurance of Section II - Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Separation Of Insureds**

Except with respect to the Limits of Insurance of Section II - Liability, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   (1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

   (2) Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph (2) above and supervisory, inspection or engineering services.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft, or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, on which are permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1) Products that are still in your physical possession; or

        (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            (a) When all of the work called for in your contract has been completed.

            (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            (c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as complete.

        The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

    b. Does not include "bodily injury" or "property damage" arising out of:

        (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

        (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

    a. Means:

Case 3:15-cv-00244-TAV-HBG   Document 1-1   Filed 06/10/15   Page 93 of 162   PageID #: 95

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (a) You;

    (b) Others trading under your name; or

    (c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

**SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY)**

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a. Five days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy;

(1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

    (a) Seasonal unoccupancy; or

    (b) Buildings in the course of construction, renovation or addition.

Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

(2) After damage by a Covered Cause of Loss, permanent repairs to the building:

    (a) Have not started, and

    (b) Have not been contracted for,

within 30 days of initial payment of loss.

(3) The building has:

    (a) An outstanding order to vacate;

    (b) An outstanding demolition order; or

    (c) Been declared unsafe by governmental authority.

(4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

(5) Failure to:

    (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

(b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the tax authority regarding payment of such taxes.

b. 10 days before the effective date of cancellation if we cancel for non-payment of premium.

c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. Concealment, Misrepresentation Or Fraud

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

D. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

E. Inspections And Surveys

1. We have the right to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

a. Are safe and healthful; or

b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

F. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

G. Liberalization

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

H. Other Insurance

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section I - Property.

2. Business Liability Coverage is excess over:

   a. Any other insurance that insures for direct physical loss or damage; or

   b. Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

3. When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so but we will be entitled to the insured's rights against all those other insurers.

I. Premiums

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums; and

   b. We will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

   a. Paid to us prior to the anniversary date; and

   b. Determined in accordance with Paragraph 2. above.

   Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

J. Premium Audit

1. This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

2. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

3. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

K. Transfer Of Rights Of Recovery Against Others To Us

1. Applicable to Businessowners Property Coverage:

   If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

   a. Prior to a loss to your Covered Property.

   b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

      (1) Someone insured by this insurance;

      (2) A business firm:

         (a) Owned or controlled by you; or

         (b) That owns or controls you; or

      (3) Your tenant.

   You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

   This will not restrict your insurance.

**2.** Applicable to Businessowners Liability Coverage:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSIONS - ASBESTOS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Under **Section II - Liability:**

The following exclusion is added to Paragraph **B., Exclusions** in the Businessowners Coverage Form:

**This insurance does not apply to "bodily injury", "personal and advertising injury" or "property damage" arising out of:**

1. Inhaling, ingesting, or physical exposure to goods or products containing asbestos; or

2. The use of asbestos in constructing or manufacturing any goods, product or structure; or

3. The removal, repair, encapsulation, enclosure, abatement or maintenance of asbestos in or from any goods, product or structure; or

4. The manufacture, sale, distribution, transportation, storage or disposal of asbestos or goods or products containing asbestos.

This insurance does not apply to payment for the investigation or defense or any claim, injury, loss, fine, penalty or lawsuit related to any of the foregoing items 1 thru 4. Nor do we have a duty to investigate or defend any such claim, injury, loss or lawsuit.

This insurance also does not apply to any loss, cost or expense incurred in complying with any federal, state or local provision of law regarding the inspection, monitoring, or control of asbestos in any goods, products or structures.

BPW 02 01 03 06

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SIGNATURE SERIES
# BUSINESSOWNERS MEDICAL OFFICES
# LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SECTION II - LIABILITY

Under **SECTION II - LIABILITY, A. Coverages, 1. Business Liability, f. Coverage Extension - Supplementary Payments** is amended as follows:

Item (1)(b) is deleted and replaced with the following:

Up to $750 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

The following coverages are added to Paragraph **A. Coverages** of **Section II - Liability:**

**3. Voluntary Property Damage**

**a. Insuring Agreement**

We will pay, at your request, for "property damage" to property of others caused by you, or while in your possession, arising out of your business operations.

**b. Limits of Insurance**

The most we will pay under Voluntary Property Damage for "loss" arising out of any one "occurrence" is $250. The most we will pay for the sum of all "losses" under this coverage is $1,000.

**c. Deductible**

We will not pay for "loss" in any one "occurrence" until the amount of "loss" exceeds $250. We will then pay the amount of "loss" in excess of $250, up to the applicable Limit of Insurance for this coverage as listed in Paragraph **b.** above.

**d. Exclusions**

The following additional exclusions apply to the insurance coverage provided under Voluntary Property Damage:

(1) "Loss" of property at premises owned, rented, leased, operated or used by you.

(2) "Loss" of property while in transit;

(3) "Loss" of property owned by, rented to, leased to, borrowed by or used by you:

(4) The cost of repairing or replacing:

(a) "Your work" defectively or incorrectly done by you; or

(b) "Your product" manufactured, sold or supplied by you;

unless the "property damage" is caused directly by you after delivery of "your product" or completion of 'your work' and resulting from a subsequent undertaking.

(5) "Loss" of property caused by or arising out of the "products-completed operations hazard."

**e. Actual Cost**

In the event of covered "loss", you shall, if requested by us, replace the damaged property or furnish the labor and materials necessary for repairs thereto at your actual cost, excluding profit or overhead charges.

**f. Definition**

For coverages provided under Voluntary Property Damage, the following definitions are added to Paragraph **F. Liability and Medical Expenses Definitions** of **SECTION II - LIABILITY:**

"Loss" means unintentional damage or destruction but does not include disappearance, theft, or loss of use.

**4. Care, Custody or Control**

**a. Insuring Agreement**

We will pay those sums the insured becomes legally obligated to pay as damages because of "property damage" to:

Case 3:15-cv-00244-TAV-HBG   Document 1-1   Filed 06/10/15   Page 99 of 162   PageID #:
101

**(1)** Property of others that is loaned to you;

**(2)** Property of others while in your care, custody or control or property as to which you are exercising physical control if the "property damage" arises out of your business operation.

**b. Limits of Insurance**

The most we will pay under Care, Custody or Control for "property damage" is $10,000 for each "occurrence".

**c. Deductible**

We will not pay for "property damage" in any one "occurrence" until the amount of "property damage" exceeds $250. We will then pay the amount of "property damage" in excess of $250, up to the applicable Limit of Insurance for this coverage as listed in Paragraph **b.** above.

**d. Exclusions**

The following additional exclusions apply to the insurance coverage provided under Care, Custody or Control:

**(1)** "Property damage" to property at any premises owned, rented, leased, operated or used by you;

**(2)** "Property damage" to property while in transit:

**(3)** The cost of repairing or replacing:

    **(a)** "Your work" defectively or incorrectly done by you; or

    **(b)** "Your product" manufactured, sold or supplied by you; unless the "property damage" is caused directly by you after delivery of "your product" or completion of "your work" and resulting from a subsequent undertaking.

**(4)** "Property damage" to property caused by or arising out of the "products-completed operations hazard."

**e. Actual Cost**

In the event of covered "property damage", you shall, if requested by us, replace the property or furnish the labor and materials necessary for repairs thereto at your actual cost, excluding profit or overhead charges.

**5. Water Damage Legal Liability**

**a. Insuring Agreement**

We will pay those sums that the insured becomes legally obligated to pay as damages because of "property damage" arising out of water damage to premises that are both rented to and occupied by you.

**b. Limits of Insurance**

The most we will pay under Water Damage Legal Liability for all "property damage" arising out of any one "occurrence" is $25,000.

**c. Exclusions**

The following additional exclusions apply to the insurance coverage provided under Water Damage Legal Liability:

**(1)** "Property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**(2)** "Property damage" caused by or resulting from any of the following:

    **(a)** Wear and tear,

    **(b)** Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

    **(c)** Smog or smoke;

    **(d)** Settling, cracking, shrinking or expansion.

    **(e)** Insects, birds, rodents or other animals; or

    **(f)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

**(3)** "Property damage" caused directly or indirectly by any of the following:

    **(a)** Any earth movement, such as an earthquake, land-slide, mine subsidence or earth sinking, rising or shifting;

    **(b)** Volcanic eruption, explosion or effusion;

(c) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(d) Mudslide or mudflow;

(e) Water that backs up from a sewer or drain; or

(f) Water under the ground surface pressing on or flowing or seeping through:

    (i) Foundations, walls, floors or paved surfaces;

    (ii) Basements, whether paved or not or

    (iii) Doors, windows or other openings.

(4) "Property damage" caused by or resulting from any of the following:

    (a) Water that leaks or flows from any plumbing, heating, air conditioning or fire protection system caused by or resulting from freezing, unless:

        (i) You make a reasonable effort to maintain heat in the building or structure; or

        (ii) You drain the equipment and shut off the water supply if the heat is not maintained.

(5) "Property damage" to:

    (a) Plumbing, heating, air conditioning, fire protection systems, or other equipment or appliances; or

    (b) The interior of the premises caused by or resulting from rain or snow, whether driven by wind or not.

The following are added to **SECTION II - LIABILITY, C. Who Is An Insured.**

3. Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company and over which you maintain ownership or majority interest, will qualify as an Insured if there is no other similar insurance available to that organization. However:

    a. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Paragraph **A.1.** Business Liability does not apply to:

    (1) "Bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    (2) "Personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named insured in the Declarations.

4. For Business Liability only, the owner of any building leased to you, but only if the building owner is a shareholder in your corporation or a partner in your partnership or member in your limited liability company insured in this policy, and only with respect to liability arising out of the ownership maintenance or use of that part of the premises leased to you. However, this insurance does not apply:

    a. To any "occurrence" or offense which takes place after you cease to be a tenant in the premises; or

    b. To structural alterations, new construction or demolition operations performed by or on behalf of the building owner.

    c. "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for a state or a municipality; or

    d. "Bodily injury" or "property damage" included within the "products-completed" operations hazard.

5. Any person or organization with respect to their liability as a concessionaire trading under your name with your permission.

When you have agreed in writing in a contract or agreement that such person(s) or organization(s) be named as additional insured on your policy. Such person(s) or organization(s) is an insured only with respect to their liability as required in the contract or agreement.

The coverage afforded to the Additional Insured is solely limited to liability specifically resulting from the conduct of the Named Insured, which may be imputed to the Additional Insured.

A person's or organization's status as an Additional Insured under this endorsement ends when their contract or agreement with you ends.

This insurance does not apply to "Bodily injury" or "property damage" included within the "products-completed" operations hazard.

The following is added to paragraph **b.** of **SECTION II - LIABILITY, D. Liability and Medical Expense Limits of Insurance,**

**4. Aggregate Limits:**

This limitation applies separately to each "location" owned by or rented to you. "Location" means premises involving the same or connecting lots or whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

Items **e.** and **f.** are added to **E. Liability And Medical Expenses General Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** as follows:

- **e.** The requirement in Condition **2.a.** applies only when the "occurrence" or offense is known to:

  (1) You, if you are an individual;

  (2) A partner, if you are a partnership; or

  (3) An "executive officer" or insurance manager, if you are a corporation.

  (4) A manager, if you are a limited liability company.

- **f.** The requirement in Condition **2.b.** will not be breached unless the breach occurs after such claim or "suit" is known to:

  (1) You, if you are an individual;

  (2) A partner, if you are a partnership, or

  (3) An "executive officer" or insurance manager, if you are a corporation.

  (4) A manager, if you are a limited liability company.

The following is added to **E. Liability And Medical Expenses General Conditions:**

**5.** Representations

By accepting this policy, you agree:

- **a.** The statements in the Declarations are accurate and complete;

- **b.** Those statements are based upon representations you made to us; and

- **c.** We have issued this policy in reliance upon your representations.

- **d.** Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy, provided such failure to disclose all hazards or prior "occurrences" is not intentional.

Item **3.** under **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions** is deleted and replaced with:

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury by that person at any time which results as a consequence of the bodily injury, sickness or disease.

The following definition is added to **SECTION II - LIABILITY, F. Liability and Medical Expenses Definitions:**

**23.** Suit means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

- **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

- **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Case 3:15-cv-00244-TAV-HBG  Document 1-1  Filed 06/10/15  Page 102 of 162  PageID #: 104

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph B.1. Exclusions - Applicable To Business Liability Coverage in Section II - Liability:

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

(1) A person arising out of any;

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal injury" to that person at whom any of the employment-related practices described in Paragraph (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraph (a), (b) or (c) above occurs before employment, during employment or after employment of that person.

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2001

BP 04 17 01 10

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PROFESSIONAL LIABILITY EXCLUSION - COMPUTER AND ELECTRONIC DATA PROCESSING SERVICES, COMPUTER CONSULTING OR PROGRAMMING SERVICES AND WEB-SITE DESIGNERS.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B. Exclusions** in **Section II - Liability**:

**B. Exclusions**

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal and advertising injury" arising out of any act, error or omission with respect to data processing services rendered by, or that should have been rendered by:

   a. The insured; or

   b. Any person or organization:

      i. For whose acts, errors or omissions the insured is legally responsible; or

      ii. From whom the insured assumed liability by reason of a contract or agreement.

2. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, electronic data processing, computer consulting or computer programming services, advice or instruction by:

   a. The insured; or

   b. Any person or organization:

      i. For whose acts, errors or omissions the insured is legally responsible; or

      ii. From whom the insured assumed liability by reason of a contract or agreement.

3. "Bodily injury" or "property damage" arising out of any act, error or omission with respect to web-site designer or consultant services, rendered by or that should have been rendered by:

   a. The insured; or

   b. Any person or organization:

      i. For whose acts, errors or omissions the insured is legally responsible; or

      ii. From whom the insured assumed liability by reason of a contract or agreement.

Includes Copyrighted Material of Insurance Services Office, Inc., with its permission.

BPW 02 03 01 06

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - CONTROLLING INTEREST

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| **Name Of Person Or Organization:** |
|---|
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **C. Who Is An Insured** in **Section II - Liability**

4.  The person or organization shown in the Schedule or in the Declarations, but only for their liability arising out of:

a.  Their financial control of you; or

b.  Premises they own, maintain or control while you lease or occupy those premises.

This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

© ISO Properties, Inc., 2004                                              BP 04 06 01 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VALUE GUARD ENDORSEMENT

The Limit of Liability shown in the Declarations for Building(s) may be increased at the beginning of each renewal period based upon the change in construction costs indicated in the Boeckh Index for the area in which the building is located.

**BPW 01 27 10 93**

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# COMPUTER FRAUD AND FUNDS TRANSFER FRAUD

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Coverage | Limit Of Insurance |
|---|---|
| Computer Fraud And Funds Transfer Fraud Coverage | $ |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section I - Property** is amended as follows:

The following is added to Paragraph **A.5. Additional Coverages:**

A. **Computer Fraud And Funds Transfer Fraud**

   1. The Computer Fraud And Funds Transfer Fraud Coverage Limit shown in the Schedule of this endorsement is the most we will pay for loss of and damage to "money", "securities" and "other property" following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the described premises, bank or savings institution:

     a. To a person (other than a messenger) outside those premises; or

     b. To a place outside those premises.

   2. The Computer Fraud And Funds Transfer Fraud Coverage Limit shown in the Schedule of this endorsement is the most we will pay for loss of "money" and "securities" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "money" and "securities" from your "transfer account".

B. With respect to the coverage provided by this endorsement, Paragraph **A.4. Limitations** is amended as follows:

  Subparagraph **a.(4)** does not apply.

C. With respect to the coverage provided by this endorsement, Paragraph **B. Exclusions** is amended as follows:

   1. Paragraph **2.g. False Pretense** does not apply.

   2. **The following exclusion is added:** We will not pay for loss or damages caused by or resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

D. The following exclusion is added to Paragraph **G.2.b. Money And Securities** Optional Coverages:

     (4) Or damage to "money" and "securities" following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the described premises, bank or savings institution:

       (a) To a person (other than a messenger) outside those premises; or

       (b) To a place outside those premises.

E. The following are added to Paragraph **H. Property Definitions:**

   15. "Employee"

     a. Employee means:

       (1) Any natural person:

         (a) While in your service or for 30 days after termination of service;

         (b) Who you compensate directly by salary, wages or commissions; and

         (c) Who you have the right to direct and control while performing services for you;

       (2) Any natural person who is furnished temporarily to you:

         (a) To substitute for a permanent "employee" as defined in Paragraph **(1)**, who is on leave; or

© ISO Properties, Inc., 2004

(b) To meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the premises;

(3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph (2) above;

(4) Any natural person who is:

(a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan(s)" insured under this policy; and

(b) Your director or trustee while that person is handling "funds" or "other property" of any "employee benefit plan(s)" insured under this policy;

(5) Any natural person who is a former "employee", director, partner, "member", "manager", representative or trustee retained as a consultant while performing services for you; or

(6) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the premises.

b. "Employee" does not mean:

(1) Any agent, broker, factor, commission merchant, cosignee, independent contractor or representative of the same general character; or

(2) Any "manager", director or trustee except while performing acts coming within the scope of the usual duties of an "employee".

16. "Fraudulent instruction" means:

a. An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

b. A written instruction (other than those described in Paragraph A.5.k.) issued by you, which was forged or altered by someone other than you without your knowledge or consent or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

c. An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an employee but which was in fact fraudulently transmitted by someone else without your or the employee's knowledge or consent.

17. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property excluded under this policy.

18. "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "money" and "securities":

a. By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

b. By means of written instructions (other than those described in Paragraph A.5.k.) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc., 2001  **BP 05 01** 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - OWNERS OR OTHER INTERESTS FROM WHOM LAND HAS BEEN LEASED

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| |
|---|
| A. Name Of Person Or Organization: |
| B. Designation Of Premises (Part Leased To You): |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **C. Who Is An Insured** in **Section II - Liability:**

3.  The person or organization shown in the Schedule is also an insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of the land leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

a.  Any "occurrence" that takes place after you cease to lease that land; or

b.  Structural alterations, new construction or demolition operations performed by or for the person or organization shown in the Schedule.

© ISO Properties, Inc., 2004                                          **BP 04 10** 01 06

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# EXCLUSION - INTERCOMPANY PRODUCTS SUITS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of "your products" and included within the "products-completed operations hazard."

Includes copyrighted material of
Insurance Services Office, Inc.,
with its permission.                                            BPW 01 86  03 06

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
# ADDITIONAL INSURED - MANAGERS OR LESSORS
# OF PREMISES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| |
|---|
| A. Designation Of Premises (Part Leased To You): |
| B. Name Of Person Or Organization (Additional Insured): |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** The following is added to Paragraph **C. Who Is An Insured** in **Section II - Liability**:

  **3.** The person or organization shown in the Schedule is also an insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule.

**B.** The following exclusions are added to **Section II - Liability**:

This insurance does not apply to:

**1.** Any "occurrence" that takes place after you cease to be a tenant in the premises described in the Schedule.

**2.** Structural alterations, new construction or demolition operations performed by or for the person or organization designated in the Schedule.

© ISO Properties, Inc., 2004                                          **BP 04 02** 01 06

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
# ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Prem. No. | Bldg. No. | Coverage 1 (Check) If Applies | Coverage 2 Limit Of Insurance | Coverage 3 Limit Of Insurance | Coverages 2 And 3 Combined Limit Of Insurance* |
|---|---|---|---|---|---|
|  |  |  | $ | $ | $ |
|  |  |  | $ | $ | $ |
|  |  |  | $ | $ | $ |
| Business Income And Extra Expense Optional Coverage Enter Yes Or No: | | | | | |
| Number Of Hours Waiting Period For Period Of Restoration Applicable To Business Income And Extra Expense Optional Coverage: | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |
| *Do not enter a Combined Limit of Insurance if individual Limits of Insurance are selected for Coverages 2 and 3, or if one of these Coverages is not applicable. | | | | | |

**Section I - Property** is amended as follows:

A. Each Coverage - Coverage 1, Coverage 2 and Coverage 3 - is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for the Coverage(s) in the Schedule.

B. **Application Of Coverage(s)**

The Coverage(s) provided by this endorsement apply only if both B.1. and B.2. are satisfied and are then subject to the qualifications set forth in B.3.

1. The ordinance or law:

   a. Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

   b. Is in force at the time of loss.

   But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

2. The building sustains direct physical damage:

   a. That is covered under this policy and such damage results in enforcement of the ordinance or law; or

   b. That is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

   c. But if the damage is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

3. In the situation described in **B.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages 1, 2 and/or 3 of this endorsement. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

   (Section H. of this endorsement provides an example of this procedure.)

However, if the covered direct physical damage alone would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under terms of Coverages 1, 2 and/or 3 of this endorsement.

C. We will not pay under Coverage 1, 2, or 3 of this endorsement for:

1. Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread of any activity of "fungi", wet or dry rot or bacteria; or

2. The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

D. Coverage

1. Coverage 1 - Coverage For Loss To The Undamaged Portion Of The Building

   With respect to the building that has sustained covered direct physical damage, we will pay under Coverage 1 for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building. Coverage 1 is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage 1 does not increase the Limit of Insurance.

2. Coverage 2 - Demolition Cost Coverage

   With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

   Paragraph E.5.d. Loss Payment Property Loss Condition does not apply to Demolition Cost Coverage.

3. Coverage 3 - Increased Cost Of Construction Coverage

   With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

   a. Repair or reconstruct damaged portions of that building; and/or

b. Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

However:

a. This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

b. We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

Paragraph E.5.d. Loss Payment Property Loss Condition does not apply to the Increased Cost of Construction Coverage.

E. Loss Payment

1. All following loss payment Provisions E.2. through E.5., are subject to the apportionment procedure set forth in Section B.3. of this endorsement.

2. When there is a loss in value of an undamaged portion of a building to which Coverage 1 applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

   a. If the property is repaired or replaced on the same or another premises, we will not pay more than the lesser of:

      (1) The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

      (2) The Limit of Insurance shown in the Declarations as applicable to the covered building.

   b. If the property is not repaired or replaced, we will not pay more than the lesser of:

      (1) The actual cash value of the building at the time of loss; or

      (2) The Limit of Insurance shown in the Declarations as applicable to the covered building.

3. Unless Paragraph **E.5.** applies, loss payment under Coverage **2** - Demolition Cost Coverage will be determined as follows:

   We will not pay more than the lesser of the following:

   a. The amount you actually spend to demolish and clear the site of the described premises; or

   b. The applicable Limit of Insurance shown for Coverage **2** in the Schedule above.

4. Unless Paragraph **E.5.** applies, loss payment under Coverage **3** - Increased Cost of Construction Coverage will be determined as follows:

   a. We will not pay under Coverage **3**:

      (1) Until the property is actually repaired or replaced, at the same or another premises; and

      (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

   b. If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **3** is the lesser of:

      (1) The increased cost of construction at the same premises; or

      (2) The applicable Limit of Insurance shown for Coverage **3** in the Schedule above.

   c. If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **3** is the lesser of:

      (1) The increased cost of construction at the new premises; or

      (2) The applicable Limit of Insurance shown for Coverage **3** in the Schedule above.

5. If a **Combined** Limit of Insurance is shown for Coverages **2** and **3** in the Schedule above, Paragraphs **E.2.** and **E.3.** of this endorsement do not apply with respect to the Building property that is subject to the Combined Limit, and the following loss payment provisions apply instead:

   The most we will pay, for the total of all covered losses for Demolition Cost and

Increased Cost of Construction, is the Combined Limit of Insurance shown for Coverages **2** and **3** in the Schedule above. Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

   a. For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

   b. With respect to the Increased Cost of Construction:

      (1) We will not pay for the increased cost of construction:

         (a) Until the property is actually repaired or replaced, at the same or another premises; and

         (b) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

      (2) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

      (3) If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

F. The terms of this endorsement apply separately to each building to which this endorsement applies.

G. Under this endorsement, we will not pay for loss due to any ordinance or law that:

   1. You were required to comply with before the loss, even if the building was undamaged; and

   2. You failed to comply with.

H. Example of Proportionate Loss Payment for Ordinance or Law Coverage Losses (procedure as set forth in Section B.3. of this endorsement).

   Assume:

   • Wind is a Covered Cause of Loss. Flood is an excluded Cause of Loss;

   • The building has a value of $200,000;

- Total direct physical damage to building: $100,000;

- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value;

- Portion of direct physical damage that is covered (caused by wind): $30,000;

- Portion of direct physical damage that is not covered (caused by flood): $70,000; and

- Loss under Ordinance or Law Coverage 3 of this endorsement: $60,000.

Step 1: Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 divided by $100,000 = .30

Step 2: Apply that proportion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for the Coverage 3 loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

NOTE: The same procedure applies to losses under Coverages 1 and 2 of this endorsement.

I. If shown as applicable in the Schedule of this endorsement, the following applies:

BUSINESS INCOME AND EXTRA EXPENSE OPTIONAL COVERAGE

1. If a Covered Cause of Loss occurs to property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of suspension of your "operations" caused by or resulting from the enforcement of any ordinance or law that:

   a. Regulates the construction or repair of any property;

   b. Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

   c. Is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

2. Paragraph H.9. Period Of Restoration Definition is replaced by the following:

   9. "Period of Restoration" means the period of time that:

      a. Begins:

         (1) 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises, unless a lesser number of hours is shown in the Schedule of the endorsement; or

         (2) Immediately after the time of the direct physical loss or damage for Extra Expense Coverage caused by or resulting from any Covered Cause of Loss at the described premises; and

      b. Ends on the earlier of:

         (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

         (2) The date when business is resumed at a new permanent location.

      "Period of restoration" includes any increased period required to repair or reconstruct the property to comply with the minimum standards of any ordinance or law, in force at the time of loss, that regulates the construction or repair, or requires the tearing down of any property.

      The expiration date of this policy will not cut short the "period of restoration".

Case 3:15-cv-00244-TAV-HBG Document 1-1 Filed 06/10/15 Page 116 of 162 PageID #: 118

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# ADDITIONAL INSURED - TRUST, TRUSTEE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Under **Section II - Liability**:

**WHO IS AN INSURED** (Section C) is amended to include:

1. If you are designated in the declarations as:

   e. a trust, you are an insured. Your trustees are also insureds but only with respect to their duties
      as trustees.

Includes copyrighted material of
Insurance Services Office, Inc.,
with its permission.

BPW 01 87 03 06

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Exclusion **B.1.f. Pollution** in **Section II - Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

(a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

(b) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(i) At any premises, site or location which is or was at any time used

by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(ii) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

© ISO Properties, Inc., 2004

BP 04 93 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - STATE OR POLITICAL SUBDIVISIONS - PERMITS RELATING TO PREMISES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| State Or Political Subdivision: |
| --- |
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **C. Who Is An Insured in Section II - Liability**:

4.  Any state or political subdivision shown in the Schedule is also an insured, subject to the following additional provision:

This insurance applies only with respect to the following hazards for which the state or political subdivision has issued a permit in connection with premises you own, rent, or control and to which this insurance applies:

a.  The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoistaway openings, sidewalk vaults, street banners, or decoration and similar exposures;

b.  The construction, erection, or removal of elevators; or

c.  The ownership, maintenance, or use of any elevators covered by this insurance.

© ISO Properties, Inc., 2004                                    **BP 04 07 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):** |
| **Description Of Leased Equipment:** |
| **Location(s) Of Leased Equipment:** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **C. Who Is An Insured** in **Section II - Liability**:

3.  The person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

© Insurance Services Office, Inc., 2009
                                                               BP 04 16 01 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UTILITY SERVICES - TIME ELEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Prem. No. | Bldg. No. | Utility Services Limit Of Insurance | Water Supply Property (Check If Applies) | Communication Supply Property | Power Supply Property |
|-----------|-----------|-------------------------------------|------------------------------------------|-------------------------------|-----------------------|
|           |           |                                     |                                          | Enter Either "Included" Or "Not Included" Overhead Transmission Lines (If Applicable) | |
|           |           | $                                   |                                          |                               |                       |
|           |           |                                     |                                          |                               |                       |
|           |           |                                     |                                          |                               |                       |
|           |           |                                     |                                          |                               |                       |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

The coverage provided by this endorsement is subject to the provisions of Section I - Property, except as provided below.

**A.** The following is added to Paragraph **A. Coverage:**

We will pay for loss of Business Income or Extra Expense at the described premises caused by the interruption of service to the described premises.  The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the property described in Paragraph **C.** of this endorsement if such property is indicated in the Schedule.

**B.  Exception**

Coverage under this endorsement does not apply to Business Income loss or Extra Expense related to interruption in utility service which causes loss or damage to "electronic data", including destruction or corruption of "electronic data".

**C.  Utility Services**

1.  Water Supply Services meaning the following types of property supplying water to the described premises:

    **a.**  Pumping stations; and

    **b.**  Water mains.

2.  Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

    **a.**  Communication transmission lines, including optic fiber transmission lines;

    **b.**  Coaxial cables; and

    **c.**  Microwave radio relays except satellites.

    It does not include overhead transmission lines unless indicated in the Schedule.

3.  Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

    **a.**  Utility generating plants;

    **b.**  Switching stations;

    **c.**  Substations;

    **d.**  Transformers; and

    **e.**  Transmission lines.

Case 3:15-cv-00244-TAV-HBG   Document 1-1   Filed 06/10/15   Page 121 of 162   PageID #: 123

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Premises Number: | Building Number: | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| **Description Of Property:** | | |
| **Loss Payee Name:** | | |
| **Loss Payee Address:** | | |
| **Premises Number:** | **Building Number:** | **Applicable Clause** (Indicate Paragraph A, B, C or D): |
| **Description Of Property:** | | |
| **Loss Payee Name:** | | |
| **Loss Payee Address:** | | |
| **Premises Number:** | **Building Number:** | **Applicable Clause** (Indicate Paragraph A, B, C or D): |
| **Description Of Property:** | | |
| **Loss Payee Name:** | | |
| **Loss Payee Address:** | | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance.  We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property,** as shown in the Declarations or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1.   Adjust losses with you; and

2.   Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  Lender's Loss Payable Clause**

1.   The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee whose interest in that Covered Property is established by such written instruments as:

a.   Warehouse receipts;

b.   A contract for deed;

c.   Bills of lading;

d.   Financing statements; or

© Insurance Services Office, Inc., 2009

e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

   c. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      (1) Pays any premium due under this policy at our request if you have failed to do so;

      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

      All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

   d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

      (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

      (2) The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

      At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

C. **Contract Of Sale Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   a. Adjust losses with you; and

   b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to Paragraph **H. Other Insurance** in Section III - **Common Policy Conditions:**

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

D. **Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

2. We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SIGNATURE SERIES
# BUSINESSOWNERS MEDICAL OFFICES
# PROPERTY ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SECTION I - PROPERTY

**100 Feet Limitation:** The reference to 100 feet is changed to read 1,000 feet in the following paragraphs. **A.1.a.(6)(b) Buildings; A.1.b. Business Personal Property; A.5.f.(1)(a) Business Income; A.5.g.(1) Extra Expense; A.6. Coverage Extensions.**

Under **A. Coverage, 5. Additional Coverages b. Preservation of Property**, item (2) is changed to:

(2) Only if the loss or damage occurs within 90 days after the the property is first moved.

Under **A. Coverage, 5. Additional Coverages, c. Fire Department Service Charge**, the following is added:

No Deductible applies to this Additional Coverage.

Under **A. Coverage, 5. Additional Coverages h. Pollutant Clean-up and Removal** the limit is increased from $10,000 to $50,000.

Under **A. Coverage, 5. Additional Coverages i. Civil Authority** the reference to 72 hours is amended to 24 hours.

Under **A. Coverage, 5. Additional Coverages j. Money Orders And "Counterfeit Money"** the limit is increased from $1,000 to $10,000.

Under **A. Coverage, 5. Additional Coverages o. Fire Extinguisher Systems Recharge Expense**, the limit under (3) is increased from $5,000 to $25,000, and item (4) is added:

(4) No deductible applies to this Additional Coverage.

The following are added to item **5. Additional Coverages**:

s. **Lock Replacement**

We will pay the cost to repair the door locks or tumblers of your described premises due to "theft" of your door keys.

The most we will pay under this Additional Coverage is $10,000. No deductible applies to this Additional Coverage.

"Theft" means any act of stealing. "Theft" does not mean mysterious or unexplained disappearance of property.

t. **Inventory and Appraisals**

We will pay the cost of any inventory and appraisal that we require when loss or damage occurs to Covered Property.

The most we will pay for such inventory or appraisal is $10,000.

u. **Reward Payment**

(1) We will reimburse you for rewards paid as follows:

(a) Up to $10,000 to an eligible person for information leading to the arrest and conviction of any person or persons committing a crime resulting in loss or damage to Covered Property from a Covered Cause of Loss. However, we will pay no more than the lesser of the following amounts:

(i) Actual cash value of the Covered Property at the time of loss or damage, but not more than the amount required to repair or replace it; or

(ii) The amount determined by the loss settlement procedure applicable to the Covered Property under the Loss Payment Condition.

(b) Up to $10,000 to an eligible person for the return of stolen Covered Property, when the loss or damage is caused by theft. However, we will pay no more than the lesser of the following amounts:

(i) Actual cash value based on the condition of the Covered Property at the time it is returned, but not more than the amount required to repair or replace it; or

(ii) The amount determined by the loss settlement procedure applicable to the returned Covered Property under the Loss Payment Condition.

(2) This Additional Coverage applies subject to the following additional conditions:

(a) An eligible person means that person designated by a law enforcement agency as being the first to voluntarily provide the information leading to the arrest and conviction or return of the stolen Covered Property, and who is not:

(i) You;

(ii) Your employee;

(iii) An employee of a law enforcement agency;

(iv) An employee of a business engaged in property protection;

(v) Any person who had custody of the Covered Property at the time the theft was committed; or

(vi) Any person involved in the crime.

(b) No reward will be reimbursed unless and until the person(s) committing the crime is (are) convicted or the Covered Property is returned.

(c) You must have posted public notice of reward prior to the first person volunteering the necessary information or returning the stolen Covered Property.

(3) The lesser of the amount of the reward or the amount shown in (1)(a) and (b) above is the most we will reimburse for loss under this Additional Coverage for any one occurrence.

v. **Theft Damage to Un-owned Building Property**

(1) We will pay for damage to:

(a) That part of any un-owned building containing Your Business Personal Property; or

(b) Un-owned Equipment within that building to maintain or service the building; Caused directly by theft or attempted theft.

(2) This Additional Coverage is primary and applies only to premises where you are a tenant and are required in your lease to cover this exposure. This Additional Coverage does not apply to damage by fire or explosion.

(3) This Additional Coverage is included within the Limit of Insurance applicable to Your Business Personal Property at the location of loss, and does not increase that Limit of Insurance.

The most we will pay under this Additional Coverage is $1,000 in any one occurrence.

w. **Lost Master Key/Key-Card Coverage**

(1) We will pay for the necessary expenses you incur to replace keys or key-cards and adjust locks to accept new keys or key-cards or, if required, to replace locks, including the cost of their installation, necessitated by the loss of or damage to master or grand master keys or key-cards.

(2) The most we will pay under this Additional Coverage for all loss or damage in any one policy year is $15,000, but no more than $5,000 for any one occurrence.,

(3) Exclusion 2.b. and 2.f. in SECTION I - PROPERTY, Paragraph B. Exclusions in the Businessowners Coverage Form do not apply to this Additional Coverage.

x. **Ordinance Or Law - Equipment Coverage**

(1) Subject to Paragraph (2) below, if a Covered Cause of Loss occurs to equipment that is covered property, we will pay the additional costs to repair or replace the equipment as required by law.

(2) If a Covered Cause of Loss occurs to refrigeration equipment that is covered property, we will pay:

(a) The cost to reclaim the refrigerant as required by law;

(b) The cost to retrofit the equipment to use a non-CFC refrigerant as required by the Clean Air Act of 1990 and any amendments thereto or any other similar laws; and

(c) The increased cost to recharge the system with a non-CFC refrigerant.

(3) The terms of this coverage apply separately to each piece of covered equipment.

(4) We will not pay under this endorsement for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", except as provided in (2)(a) above.

(5) Loss to the equipment will be determined as follows:

(a) If the Replacement Cost applies and the equipment is repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

(i) The amount you actually spend to repair the equipment, but not for more than the amount it would cost to replace the equipment with equipment of the same kind and quality; or

(ii) The Limit of Insurance shown in the Declarations as applicable to the covered Building or Your Business Personal Property.

(b) If the Replacement Cost applies and the equipment is not repaired or replaced, or if the Replacement Cost does not apply, we will not pay more than the lesser of:

(i) The actual cash value of the equipment at the time of loss; or

(ii) The Limit of Insurance shown in the Declarations as applicable to the covered Building or Your Business Personal Property.

(c) We will not pay for loss due to any ordinance or law that:

(i) You were required to comply with before the loss, even if the equipment was undamaged; and

(ii) You failed to comply with.

y. Business Income for Web Sites

(1) We will pay for the loss of Business Income you sustain due to physical loss or damage to your Web Site operation at the premises of a vendor acting as your service provider. This loss or damage must be caused by or result from a Covered Cause of Loss.

The most we will pay under this Coverage Extension is $50,000 in any one occurrence. This Limit of Insurance is in addition to any other Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

(2) The coverage period for Business Income under this Additional Coverage:

(a) Begins 12 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of a vendor acting as your service provider.

(b) Ends 7 days after the 12 hour period immediately following the Covered Cause of Loss.

(3) This coverage applies only:

(a) If you have a back-up copy of your Web Page stored at a location other than the site of the Web Site vendor.

(b) To the extent that Business Income is permanently lost.

(4) The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income for Websites Additional Coverage.

z. Leasehold Interest

We will pay for loss of "tenants lease interest" you sustain due to the cancellation of your lease. The cancellation must result from the direct loss or damage at a premises described in the Declarations due to a Covered Cause of Loss.

The most we will pay for such loss is the least of:

(a) The total difference in rent based on the period of time remaining under your current lease; or

(b) The total difference in rent for one year; or

(c) $25,000

Under A. Coverage, 6. Coverage Extensions, a. Newly Acquired Or Constructed Property, (1) Buildings, the limit is increased from $250,000 to $1,000,000 at each building.

Under A. Coverage, 6. Coverage Extensions, a. Newly Acquired Or Constructed Property, (2) Business Personal Property, the limit is increased from $100,000 to $500,000 at each building.

Under **A. Coverage, 6. Coverage Extensions, a. Newly Acquired or Constructed Property, (3) Period of Coverage,** item **(b)** is amended to read:

180 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

Item **A. Coverage, 6. Coverage Extensions, b. Personal Property Off-premises** is deleted and replaced with the following:

**b. Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate.

Coverage also applies while property is outside the coverage territory if the involved property:

(1) Had been situated at an insured location immediately before it went off-site and suffered loss or damage, and

(2) Had not been away from an insured location for more than 90 consecutive days immediately preceding loss or damage.

The limit of insurance for Property Off-premises is increased from $10,000 to the **Personal Property Off-premises** limit shown in the Declarations. We will not pay more than the Personal Property Off-premises limit of insurance shown in the Declarations in any one loss.

Under **A. Coverage, 6. Coverage Extensions, c. Outdoor Property,** the limit for any one tree, shrub or plant is increased from $1,000 to $2,500.

Item **A. Coverage, 6. Coverage Extensions, d. Personal Effects** is deleted and replaced with the following:

**d. Personal Effects**

You may extend the insurance that applies to Business personal Property to apply to personal effects owned by you, your officers, your partners or "members" your "managers" or your employees.

This coverage extension also applies to personal effects owned by your directors or trustees, staff doctors or nurses, medical faculty members, interns, student nurses, and admitted patients.

This extension does not apply to tools or equipment used in your business.

The most we will pay for loss or damage under this Extension is $50,000 at each described premises. However, we will not pay

more than $10,000 to any one person in any one loss.

Under **A. Coverage, 6. Coverage Extensions, e. Valuable Papers And Records,** the last paragraph under **(3)** is deleted and replaced by the following:

For "valuable papers and records" not at the described premises, the most we will pay is $25,000.

Under **A. Coverage, 6. Coverage Extensions, f. Accounts Receivable,** the last paragraph under **(2)** is deleted and replaced by the following:

For account receivable not at the described premises, the most we will pay is $25,000.

Under **A. Coverage, 6. Coverage Extensions,** the following are added:

**g. Personal Property of Others**

You may extend the insurance that applies to Business Personal Property to apply to property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $50,000 at the described premises. However, we will not pay more than $10,000 to any one person in any one loss. Our payment for loss of or damage to property of others will only be for the account of the owner of the property.

**h. Employee Tools Coverage**

You may extend the insurance that applies to Business Personal Property to apply to loss or damage by a Covered Cause of Loss to tools owned by your employees while used in your business or while in your building.

However we will not pay for a loss that is caused by or results from theft or attempted theft of employee tools unless such loss occurs:

(1) At your building and there is visible evidence of forcible entry or exit on your building; or

(2) From a locked vehicle and there is visible evidence of forcible entry.

The value of Employee Tools will be determined at the actual cash value as of the time of loss or damage.

The most we will pay with respect to employee tools is $10,000 in any one occurrence.

**i. Newly Acquired Locations - Business Income**

(1) You may extend your Business Income Coverage to apply to property at any location you acquire other than fairs or exhibitions.

(2) The most we will pay for loss under this Extension is $250,000 at each location.

(3) Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

    (a) This policy expires;

    (b) 180 days expire after you acquire or begin to construct the property; or

    (c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

This Extension is additional insurance.

j. **Credit Card Invoices**

You may extend the insurance that applies to Your Business Personal Property to apply to:

(1) Sums owed you from grantors of credit provided you are unable to collect from them due to direct loss or damage to your credit card invoice records;

(2) Increased collection costs as a result of such direct loss or damage; or

(3) Other reasonable expenses that you incur to reestablish your records of credit card invoices following such direct loss or damage; that results from a Covered Cause of Loss to your records of credit card invoices.

This insurance applies to credit card invoices while:

(1) On premises scheduled in the Declarations of this policy;

(2) While being conveyed outside the premises; or

(3) While temporarily at other premises for any reason except storage.

    The most we will pay for loss or damage under this Extension is $1,000 at each described premises.

k. **Newly Acquired Fine Arts**

We will cover additional objects of art that you acquire during the policy period, for up to 30 days, but not beyond the end of the policy period. The most we will pay for a loss for any one occurrence for such newly acquired objects of art is $10,000.

You will report such property within 30 days from the date acquired and pay additional premium that is due. If you do not report the property to us, coverage will end, automatically, 30 days after the date you acquire the property or at the

end of the policy period, whichever occurs first.

l. **"Communicable Disease"**

We will pay for the following under "Communicable Disease" coverage:

(1) Direct physical loss or damage to covered property caused by or resulting from a covered "communicable disease event" at the premises described in the Declarations.

(2) The necessary costs incurred to

    (a) Clean your equipment or replace the consumable goods at the premises described in the Declarations which are declared contaminated by the local "public health authority".

    (b) Provide required doctor's care, medical test, inoculations, vaccinations, antibiotics and hospitalization to:

        (i) You or your partners;

        (ii) Officers, members, managers, directors, or trustees;

        (iii) Staff doctors or nurses, medical faculty members, or other employees

        (iv) Interns, student nurses; or

        (v) Admitted patients, residents or visitors;

        Caused by or resulting from a covered "communicable disease event" at the premises described in the Declarations, but only if such costs are incurred during the policy period or no later than 180 days after the expiration date of this policy.

        Coverage for employees is provided only if state Workers Compensation statutes do not apply.

    (c) Test, monitor, contain, treat, detoxify, neutralize, cleanup the covered property and remove the debris of covered property at the premises described in the Declarations.

(3) We will not pay under "Communicable Disease" Coverage for any loss, damage, or expense that is caused directly or indirectly by any of the following:

    (a) Fines or penalties of any kind

(b) Any increase of loss, damage, or expense caused by or resulting from the suspension, lapse or cancellation of any license, lease, or contract; or

(c) Any cost or expense you incur to evacuate the covered premises due to a "communicable disease event"; or

(d) Any other event or action otherwise excluded under this policy.

(4) A "communicable disease event" does not create, nor will it invoke coverage for Debris Removal provided elsewhere under this Coverage Section or Policy, except as provided by this Endorsement under "Communicable Disease" Coverage

(5) We will not pay for loss, damage or expense that is covered elsewhere under this policy, or any other policy, whether collectible or not.

The most we will pay for loss or damage under this extension is $50,000.

Coverage provided under this Coverage Extension is subject to the applicable property deductible shown in the Declarations.

m. **Ordinance Or Law - Tenant's Improvements and Betterments**

(1) If your policy contains coverage for Ordinance or Law, coverage is extended to include tenant's improvements and betterments as described in Paragraph **A.1.b(3)** of the Businessowners Coverage form, if:

(a) You are a tenant; and

(b) A Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises.

The most we will pay in any one occurrence under this coverage Extension is $20,000.

Under **B. Exclusions, d. Nuclear Hazard** is deleted and replaced by the following:

d. **Nuclear Hazard Exclusion With Additional Coverage - Limited Coverage for Medical Hazardous Waste And Radioactive Cleanup**

Nuclear reaction or radiation, or radioactive contamination, unless the loss or damage is caused by:

(1) Medical hazardous waste;

(2) Sudden and accidental radioactive contamination; or

(3) Resultant radiation damage to property.

We will not pay for loss or damage under this Coverage Extension if:

(1) The described premises contain:

(a) A nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction; or

(b) Any new or used nuclear fuel intended for or used in such a nuclear reactor.

(2) The contamination arises from a radioactive material not located at the described premises.

If nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

The most we will pay for loss or damage per policy period regardless of the number of "occurrences" or locations involved is $30,000, including cleanup, debris removal and Business Income and Extra Expense.

Coverage under this Limited Coverage is subject to the applicable property deductible shown in the Declarations.

In **E. Property Loss Conditions**, Paragraph **8.a.(1)(b)**, the 31% provision of the Vacancy condition is amended to 11%.

Under **H. Property Definitions**, item **9.a.(1)(a)** is deleted and replaced by the following:

(a) 24 hours after the time of direct physical loss or damage for Business Income coverage; or

The following are added to **H. Property Definitions:**:

15. "Communicable disease" means any disease caused by a biological agent that may be transmitted directly or indirectly from one human or animal to another.

16. "Communicable disease event" means an event in which a "public health authority" has ordered that the premises described in the Declarations be evacuated, decontaminated, or disinfected due to the outbreak of a "communicable disease" at such premises.

17. "Public health authority" means the governmental authority having jurisdiction over your operations relative to health and hygiene standards necessary for the protection of the public.

18. "Tenants lease interest" means the difference between the rent you will pay under a new lease at the described premises, or elsewhere, and the rent you now pay.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WATER BACK-UP AND SUMP OVERFLOW

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Premises Number | Covered Property Annual Aggregate Limit Of Insurance | Business Income And Extra Expense Annual Aggregate Limit Of Insurance |
|---|---|---|
| | $ | $ |
| | $ | $ |
| | $ | $ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

A. We will pay for direct physical loss or damage to Covered Property, covered under Section I - Property, caused by or resulting from:

1. Water or waterborne material which backs up through or overflows or is otherwise discharged from a sewer or drain; or

2. Water or waterborne material which overflows or is otherwise discharged from a sump, sump pump or related equipment, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

However, with respect to Paragraph A.2., we will not pay the cost of repairing or replacing a sump pump or its related equipment in the event of mechanical breakdown.

B. The coverage described in Paragraph A. of this endorsement does not apply to loss or damage resulting from an insured's failure to:

1. Keep a sump pump or its related equipment in proper working condition; or

2. Perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

C. The most we will pay for the coverage provided under this endorsement for all direct physical loss or damage to Covered Property is the Covered Property Annual Aggregate Limit of Insurance. That limit is $5,000 per location, unless a different Covered Property Annual Aggregate Limit of Insurance is indicated in the Schedule of this endorsement.

The applicable Covered Property Annual Aggregate Limit of Insurance is the most we will pay under this endorsement for the total of

all direct physical loss or damage sustained in any one policy year, regardless of the number of occurrences that cause or result in loss or damage to Covered Property. If loss payment for the first such occurrence does not exhaust the applicable Limit of Insurance, then the balance of that Limit is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

D. The following provisions apply to Section I - Property and supersede any provisions to the contrary:

The most we will pay under:

1. Paragraph A.5.f. Business Income Additional Coverage for all loss of Business Income you sustain due to the necessary suspension of your "operations" caused by direct physical loss or damage to Covered Property as described in Paragraph A. of this endorsement; and

2. Paragraph A.5.g. Extra Expense Additional Coverage for all necessary Extra Expense you incur and that you would not have incurred if there had been no direct physical loss or damage to Covered Property as described in Paragraph A. of this endorsement.

is the Business Income And Extra Expense Annual Aggregate Limit of Insurance. That limit is $5,000 per location, unless a different Business Income And Extra Expense Annual Aggregate Limit of Insurance is shown in the Schedule.

© Insurance Services Office, Inc., 2004

Case 3:15-cv-00244-TAV-HBG Document 1-1 Filed 06/10/15 Page 130 of 162 PageID #: 132

The applicable Business Income And Extra Expense Annual Aggregate Limit of Insurance is the most we will pay under this endorsement for the total of all loss of Business Income you sustain and Extra Expense you incur in any one policy year, regardless of the number of occurrences that cause or result in loss or damage to Covered Property as described in Paragraph A. of this endorsement. If loss payment during an earlier "period of restoration" in the policy year does not exhaust the applicable Limit of Insurance, then the balance of that Limit is available for loss of Business Income you sustain or Extra Expense you incur during a subsequent "period of restoration" beginning in, but not after, that policy year. With respect to a "period of restoration" which begins in one policy year and continues in a subsequent policy year(s), all loss of Business Income you sustain or Extra Expense you incur is deemed to be sustained or incurred in the policy year in which the "period of restoration" began.

E. With respect to the coverage provided under this endorsement, the **Water** Exclusion in **Section I - Property** is replaced by the following exclusion:

**Water**

1. Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

2. Mudslide or mudflow; or

3. Water under the ground surface pressing on, or flowing or seeping through:

    a. Foundations, walls, floors or paved surfaces;

    b. Basements, whether paved or not; or

    c. Doors, windows or other openings; or

4. Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.** or **3.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **1.** through **4.**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **1.** through **4.**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - CO-OWNER OF INSURED PREMISES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| |
|---|
| **A. Name Of Person Or Organization:** |
| **B. Location of Premises:** |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **C. Who Is An Insured** in Section II - Liability:

3. The person or organization shown in the Schedule is also an insured, but only with respect to liability as co-owner of the premises shown in the Schedule.

© ISO Properties, Inc., 2004                                          **BP 04 11 01 06**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPOILAGE COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Prem. No. | Bldg. No. | Description Of Perishable Stock | | Refrigeration Maintenance Agreement | | |
|---|---|---|---|---|---|---|
| | | | | Yes | | No |
| Causes Of Loss (Check Which One Applies) | | | Limit Of Insurance | Deductible | | |
| Breakdown Or Contamination | | Power Outage | $ | $ | | |
| Prem. No. | Bldg. No. | Description Of Perishable Stock | | Refrigeration Maintenance Agreement | | |
| | | | | Yes | | No |
| Causes Of Loss (Check Which One Applies) | | | Limit Of Insurance | Deductible | | |
| Breakdown Or Contamination | | Power Outage | $ | $ | | |
| Prem. No. | Bldg. No. | Description Of Perishable Stock | | Refrigeration Maintenance Agreement | | |
| | | | | Yes | | No |
| Causes Of Loss (Check Which One Applies) | | | Limit Of Insurance | Deductible | | |
| Breakdown Or Contamination | | Power Outage | $ | $ | | |

Section I - Property is extended to insure against direct physical loss of or damage to "perishable stock" indicated in the Schedule, caused by the Covered Cause(s) of Loss, as provided by this endorsement.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following provisions (A. through I. inclusive) apply to the coverage provided by this endorsement:

A.  Paragraph A.1. Covered Property in Section I - Property is replaced by the following:

1.  Covered Property

Covered Property means "perishable stock" shown in the Schedule at the described premises, if the "perishable stock" is:

a.  Owned by you and used in your business; or

b.  Owned by others and in your care, custody or control except as otherwise provided in Loss Payment Property Loss Condition E.5.d.(3)(b).

B.  The following is added to Paragraph A.2. Property Not Covered in Section I - Property:

k.  Property located:

(1)  On buildings;

(2)  In the open; or

(3)  In vehicles.

© ISO Properties, Inc., 2004

Case 3:15-cv-00244-TAV-HBG   Document 1-1   Filed 06/10/15   Page 133 of 162   PageID #: 135

C. Paragraph **A.3. Covered Causes Of Loss** in Section I - Property is replaced by the following:

3. **Covered Causes of Loss**

   Subject to the exclusions described in item **E.** of this endorsement, Covered Causes of Loss means the following as indicated in the Schedule:

   a. Breakdown or Contamination, meaning:

      (1) Change in temperature or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment, only while such apparatus or equipment is at the described premises shown in the Schedule; or

      (2) Contamination by a refrigerant, only while the refrigerating apparatus or equipment is at the described premises shown in the Schedule.

      Mechanical breakdown and mechanical failure do not mean power interruption, regardless of how or where the interruption is caused and whether or not the interruption is complete or partial.

   b. Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

D. Paragraph **A.6. Coverage Extensions** in Section I - Property does not apply.

E. Paragraph **B. Exclusions** in Section I - Property is replaced by the following:

   B. **Exclusions**

      1. Of the Exclusions contained in Paragraph **B.1.** in Section I - Property, only the following apply to Spoilage Coverage:

         b. Earth Movement;

         c. Governmental Action;

         d. Nuclear Hazard;

         f. War And Military Action; and

         g. Water.

2. The following exclusions are added:

   We will not pay for loss or damage caused by or resulting from:

   a. The disconnection of any refrigerating, cooling or humidity control system from the source of power.

   b. The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

   c. The inability of an electrical utility company or other power source to provide sufficient power due to:

      (1) Lack of fuel; or

      (2) Governmental order.

   d. The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

   e. Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

F. Paragraph **D. Deductibles** in Section I - Property is replaced by the following:

   We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Schedule of this endorsement. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance. No other deductible in this policy applies to the coverage provided by this endorsement.

G. **Conditions**

   1. Under **Property Loss Conditions** in Section I - Property, Item **d.** of Condition **5. Loss Payment** is replaced by the following:

      d. We will determine the value of Covered Property as follows:

         (1) For "perishable stock" you have sold but not delivered, at the selling price less discounts and expenses you otherwise would have had;

         (2) For other "perishable stock," at actual cash value.

2. The following condition applies in addition to the **Property Loss Conditions** (as modified in **1.** above) and **Property General Conditions** in **Section I - Property** and **Section III - Common Policy Conditions:**

**Additional Condition - Refrigeration Maintenance Agreements**

If Breakdown or Contamination is designated as a Covered Cause of Loss and a refrigeration maintenance agreement is shown as applicable in the Schedule, the following condition applies:

You must maintain a refrigeration maintenance or service agreement as described below. If you voluntarily terminate this agreement and do not notify us within 10 days, the insurance provided by this endorsement under the Breakdown or Contamination Covered Cause of Loss will be automatically suspended at the location involved.

However, coverage provided by this endorsement is restored upon:

a. Reinstatement of the applicable refrigeration maintenance or service agreement; or

b. Procurement of a replacement refrigeration maintenance or service agreement.

A refrigeration maintenance agreement means a written service contract, between you and the refrigeration service organization, which provides for regular periodic inspection of the refrigeration equipment at the insured location, and the servicing and repair of the equipment, including emergency response at the insured location.

H. Paragraph **G. Optional Coverages** in **Section I - Property** does not apply.

I. The following is added to the **Definitions** in **Section I - Property:**

"Perishable stock" means property:

a. Maintained under controlled temperature or humidity conditions for preservation; and

b. Susceptible to loss or damage if the controlled temperature or humidity conditions change.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# REMOVAL OF INSURANCE-TO-VALUE PROVISION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Paragraph **E.5.d. Loss Payment** Property Loss Condition in **Section I - Property** is amended as follows:

A. Paragraph **d.(1)(a)** is replaced by the following:

    (1) At replacement cost without deduction for depreciation, subject to the following:

        (a) We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

            (i) The Limit of Insurance under Section I - Property that applies to the lost or damaged property;

            (ii) The cost to replace, on the same premises, the lost or damaged property with other property:

                i. Of comparable material and quality; and

                ii. Used for the same purpose; or

            (iii) The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

B. Paragraph **d.(1)(b)** does not apply.

© Insurance Services Office, Inc., 2009

BP 04 83 01 10

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEBRIS REMOVAL ADDITIONAL INSURANCE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Premises Number | Building Number | Debris Removal Amount |
|---|---|---|
|  |  | $ |
|  |  | $ |
|  |  | $ |

Information required to complete this Schedule , if not shown above, will be shown in the Declarations.

The Debris Removal Additional Coverage in Paragraph **A.5.a** of **Section I - Property** is amended as follows:

The additional amount of $10,000 for debris removal expense is replaced by the higher amount shown in the Schedule of this endorsement.

© Insurance Services Office, Inc., 2009                    **BP 14 09  01 10**

# IN THE FOURTH CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE

CAROLE F. COPENHAVER, )
)
     Plaintiff, )
)
vs. )     **Docket No. 86713**
)
RALPH T. COPENHAVER )
)
     Defendant. )
                BY _____

**FILED**

DEC 10 2004

MARTHA PHILLIPS, CLERK

## MARITAL DISSOLUTION AGREEMENT

This Agreement entered into on this ___ day of November, 2004, between CAROLE F. COPENHAVER, a citizen and resident of Knox County, Tennessee, (hereinafter referred to as "Wife"), and RALPH T. COPENHAVER, a citizen and resident of Knox County (hereinafter referred to as "Husband"), subject to the following premises, terms, and conditions:

### WITNESSETH:

WHEREAS, the parties are married and have three minor children, namely Claire Marie Copenhaver, Katherine Elizabeth Copenhaver and William Kyle Copenhaver.

WHEREAS, both parties agree and stipulate that this agreement makes fair and equitable provisions for the distribution of property of the parties and makes adequate and sufficient provisions for the care, custody and support of the children; and

WHEREAS, both parties have full knowledge of and have made full disclosure of all separate and marital assets; and

WHEREAS, both parties acknowledge that discovery has not been completed and, although



1    **EXHIBIT**
    **"B"**

aware of the potential problems resulting from this, waive further discovery; and

WHEREAS, the parties have engaged in mediation, John K. Harber as Mediator, on October 26, 2004 and have reached a mediated agreement, upon which this Marital Dissolution Agreement is based; and

WHEREAS, both parties are voluntarily executing this agreement free of undue influence, duress, and free from any cause, reason, promise or consideration other than set out in this agreement;

THEREFORE, for and in consideration of the mutual covenants and agreements herein set forth, the parties do agree as follows:

1. **Waiver.** Except as otherwise expressly provided herein, both parties waive and repudiate all right, title and interest, consummate and inchoate, in and to the property and estate of the other including but not limited to marital, insurance, contractual, dower, homestead exemption, alimony, appointment as executor, or otherwise, in the present or in expectancy about any and all property and estate of the other.

2. **Entire Agreement.** This agreement contains the entire understanding and agreement between the parties. There are no representations, warranties, covenants, or undertakings other than those expressly set forth herein, and each party enters into this contract voluntarily, advisedly, and with knowledge of the financial condition, nature, character, and value of both parties' separate and marital property, estate, and income as represented by the other. The law of the state of Tennessee shall govern this agreement in all respects.

3. **Necessary Documents and Actions.** Each party at the request of the other will promptly execute and deliver all documents and take such actions as may be reasonably necessary.

2

4. **Noncompliance.** Should either party incur any expense or legal fees in a successful effort to enforce any portion of this marital dissolution agreement, the court shall award reasonable attorney's fees and suit expenses to the nondefaulting party. No breach, waiver, failure to seek strict compliance, or default of any of the terms of this agreement shall constitute a waiver of any subsequent breach or default of any of the terms of this agreement.

5. **Voluntary Execution.** Each party acknowledges that this agreement has been entered into of his or her own volition with full knowledge and information including tax consequences. Each believes the terms and conditions to be fair and reasonable under the circumstances. No coercion or undue influence has been used by or against either party in making this agreement.

6. **Modification.** A modification or waiver of any or all of the provisions of this agreement shall be effective only if made in writing and executed with the same formality as this agreement, and approved by the court if such approval is required. Failure of either party to insist upon strict performance of any of the provisions of this agreement shall not be construed as a waiver of any subsequent default of the same or similar nature.

7. **Prior Tax Liabilities.** If in connection with any joint Federal Income Tax Returns heretofore filed by the parties, there is a deficiency assessment, the amount ultimately determined to be due thereon shall be borne by the party whose individual income deduction or misreporting produced or led to such deficiency. Each of the parties represents to the other that all information supplied for all tax returns during the marriage is in all respects true, correct, and complete, and fully and accurately reflects the income and deduction for those years.

8. **Divorce Proceedings Filed.** Wife has filed a Complaint for Divorce in the Fourth

3

Circuit Court for Knox County, Tennessee, Docket No. 86713. The parties agree that the Court costs in this proceeding shall be taxed to the husband.

9. **Provisions Relating to Children**. The parties' rights and responsibilities with regard to their minor children, as well as provisions for the payment of child support, health insurance premiums, uncovered medical expenses, and IRS dependency exemptions shall be ordered as set forth in the Permanent Parenting Plan signed by the parties and filed in conjunction herewith.

10. **Debts**. Any debts not dealt with in this agreement shall be paid by the party who incurred the debt.

The Husband shall pay and hold the Wife harmless with respect to all financial obligations related to the Husband's dental practice and, in addition, shall within thirty (30) days after the entry of the Decree of Divorce, refinance the note secured by Deed of Trust and other instruments to First Tennessee Bank, encumbering The Dental Center located in the Fifth Civil District of Sevier County, Tennessee, and thereby to cause the Wife to be wholly released from liability with respect to all existing debt on the Dental Center. Husband shall cause evidence of the aforesaid Releases to be delivered to the Wife forthwith after the said Releases shall become effective.

11. **Real Estate**. The Wife shall have as her sole and separate property her residence located at Loice Lane in Knox County, Tennessee, and shall be responsible for any indebtedness associated therewith, and hold the Husband harmless from any liability therefor. If requested, the Husband shall execute and deliver a Quit Claim Deed with respect to the said residence.

After the Husband has refinanced The Dental Center, as aforesaid, and has caused the Wife to be released from liability and discharged with respect to the note obligations burdening the same, the Husband shall have the said Dental Center as his sole and separate property. If requested, the Wife

4

shall execute and deliver a Quit Claim Deed with respect to the said residence.

12.     Until such time as the youngest of the parties children reaches the age of twenty-two (22), the Husband shall continue to pay to the Wife the sum of $433.00 per month, which the Wife shall deposit into a custodial account for the children's college expenses, which account shall be managed by the Wife under the Uniform Transfers to Minors Act. The Wife agrees to provide to the Husband upon reasonable request periodic verification of the balance in the said account or accounts, and a specific statement of the application of such funds for the children's benefit.

13.     Each party shall retain as his/her own the household furniture, furnishings, and personalty currently in the possession of each, and each shall be responsible for any indebtedness which may exist on the property they retain hereunder, and will indemnify and hold the other harmless from such liability.

14.     The Wife shall have as her sole and separate property her 1999 Dodge Caravan and shall be responsible for any indebtedness associated therewith and shall hold the Husband harmless therefrom.

15.     The Husband shall have as his sole and separate property his 2004 Chrysler Sebring automobile and shall be responsible for any indebtedness associated therewith and shall hold the Wife harmless therefrom.

16.     As alimony in solido, the Wife shall receive fifty (50%) percent of the net proceeds derived from the sale of the real property in Sevier County, Tennessee known as The Dental Center, or $123,000.00, whichever amount is greater. There is no timetable for such sale. The Wife's interest shall be secured by a Deed of Trust, which shall be junior to the lien of First Tennessee Bank in an amount not greater than $200,000.00, and to no other liens or encumbrances.

5

17.     The Husband shall pay attorney's fees to the Wife's counsel in the amount of $3,000.00 within ninety (90) days of the date of the Decree of Divorce.

18.     The costs of this cause shall be taxed against the Husband, and he shall promptly pay the same and indemnify the Wife with respect thereto.

19.     The Mediator's fee shall be divided between the parties, two-thirds (2/3) to the Husband and one-third (1/3) to the Wife pursuant to the Mediation Agreement signed by the parties on October 26, 2004.

20.     The Wife shall have as her sole and separate property one-half (1/2) the value in the Husband's SEP-IRA, Account No. 25033114 which value is represented to be $59,158.76 as of October 26, 2004.   In turn, there shall be no judgment for child support arrearage against the Husband.  In addition, the Wife shall have as her sole and separate property all of her retirement assets, including her 401K, her SEP-IRA and her Roth IRA, together with the parties joint Schwab money market account # 260/4/63 , having a balance not less than $9,071.16.

21.     The parties agree that this Agreement shall become effective from and after the date of its execution by both parties, and it is expressly understood, agreed and intended by the parties that this Agreement shall be incorporated into the Final Decree of Divorce that shall be obtained on the grounds of irreconcilable differences pursuant to T.C.A. § 36-4-103.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first above written.

_Carole F Copenhaver_
CAROLE F. COPENHAVER

_Ralph T. Copenhaver_
RALPH T. COPENHAVER

6

## IN THE FOURTH CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE

| | |
|---|---|
| **CAROLE F. COPENHAVER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Docket No. 86713** |
| | ) |
| **RALPH T. COPENHAVER,** | ) |
| | ) |
| **Defendant.** | ) |

## DECREE OF DIVORCE

This cause came on to be heard before the Honorable Bill Swann, Judge of the Fourth

Circuit Court for Knox County, Tennessee on the _____ day of _____, 2004, upon the

Complaint for Divorce filed by the Plaintiff, the Marital Dissolution Agreement and Permanent

Parenting Plan entered into by the parties, the testimony of the Plaintiff and the entire record in

this cause, from all of which the Court finds as follows:

1. Irreconcilable differences in fact exist in the marital relation and any contest or denial

regarding any other grounds for divorce heretofore filed by either of the parties has of this date,

by leave and Order of this Court, been renounced, withdrawn and canceled.

2. **CAROLE F. COPENHAVER** and **RALPH T. COPENHAVER** have made

adequate and sufficient provisions by a written Marital Dissolution Agreement and Permanent

Parenting Plan dated the _____ day of November, 2004 for the equitable settlement of any and all

property rights between the parties and for parenting, maintenance and support of their minor

child, and said Marital Dissolution Agreement and Permanent Parenting Plan should be

incorporated into this Final Judgment for Divorce.

# IN THE FOURTH CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE

CAROLE F. COPENHAVER,      )
     )
       Plaintiff,      )
     )
vs.      )      **Docket No. 86713**
     )
RALPH T. COPENHAVER,      )
     )
       Defendant.      )

## DECREE OF DIVORCE

This cause came on to be heard before the Honorable Bill Swann, Judge of the Fourth

Circuit Court for Knox County, Tennessee on the ____ day of _____, 2004, upon the

Complaint for Divorce filed by the Plaintiff, the Marital Dissolution Agreement and Permanent

Parenting Plan entered into by the parties, the testimony of the Plaintiff and the entire record in

this cause, from all of which the Court finds as follows:

     1. Irreconcilable differences in fact exist in the marital relation and any contest or denial

regarding any other grounds for divorce heretofore filed by either of the parties has of this date,

by leave and Order of this Court, been renounced, withdrawn and canceled.

     2. **CAROLE F. COPENHAVER** and **RALPH T. COPENHAVER** have made

adequate and sufficient provisions by a written Marital Dissolution Agreement and Permanent

Parenting Plan dated the ____ day of November, 2004 for the equitable settlement of any and all

property rights between the parties and for parenting, maintenance and support of their minor

child, and said Marital Dissolution Agreement and Permanent Parenting Plan should be

incorporated into this Final Judgment for Divorce.

It is therefore **ORDERED, ADJUDGED** and **DECREED** by the Court as follows:

1. The parties are granted an absolute divorce on the grounds of irreconcilable differences and are restored to all the rights and privileges of unmarried persons.

2. The Marital Dissolution Agreement and Permanent Parenting Plan entered into and executed by the parties on the _____ day of November, 2004, are approved and adopted by the Court and attached hereto and made part of this Final Judgment for Divorce and incorporated herein as if set out verbatim. All of the provisions of said agreement shall be complied with by the parties.

3. The costs of this cause shall be taxed to Defendant, RALPH T. COPENHAVER, for which execution may issue if necessary.

4. Defendant's social security number is 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

**ENTER** this 10 day of December, 2004.

_____
**CIRCUIT JUDGE**

**APPROVED FOR ENTRY:**

_____
Robert L. Crossley, Attorney for Plaintiff
LACY, MOSELEY & CROSSLEY, P.C.
Riverview Tower
900 South Gay Street, Suite 2102
Knoxville, TN 37902
(865) 637-3780

CERTIFIED TRUE COPY
MARTHA PHILLIPS, CLERK
FOURTH CIRCUIT COURT
KNOX COUNTY, TN
BY _____
DEPUTY CLERK

2

This Instrument Prepared By:
ROBERT L. CROSSLEY
Attorney at Law
900 South Gay Street, Suite 2102
P.O. Box 991
Knoxville, Tennessee 37901-0991
Telephone: (865) 637-3780

TO BE RECORDED IN THE
SEVIER COUNTY REGISTER'S OFFICE

## DEED OF TRUST
## (OPEN END)

**Maximum Principal Indebtedness for recording tax purposes is not less than $123,000**

THIS DEED OF TRUST, made this 3rd day of December, 2004, by and between Ralph T. Copenhaver of Knox County, State of Tennessee, (herein called "Grantor"), and Robert L. Crossley, Trustee, ( herein called "Trustee"), and Carole F. Copenhaver.

## WITNESSETH:

FOR AND IN CONSIDERATION of the sum of one ($1.00) dollar and for other good and valuable considerations, the receipt and sufficiency of which is hereby acknowledged by Grantor, Grantor has this day bargained and sold, and does hereby transfer and convey, in trust to the Trustee and said Trustee's successors in trust, the following described real property, (the "Demised Premises"), situate within the State of Tennessee, to-wit:

### SEE EXHIBIT "A" HERETO

TO HAVE AND TO HOLD said Demised Premises to the said Trustee and his successors in trust, forever, but subject to the terms and conditions hereof. The Grantor covenants that Grantor is lawfully seized in fee simple of the said Demised Premises, has full power, authority and good right to convey the Demised Premises and that the Demised Premises are unencumbered EXCEPT the lien of current year *ad valorem* real property taxes, and EXCEPT first mortgage debt not exceeding $220,000.

The Grantor further covenants and binds Grantor, Grantor's agents, heirs, executors, administrators, representatives, successors and assigns, to the covenant of quiet enjoyment of the Demised Premises, to the covenant of further assurances, and to warrant and defend the title to said Demised Premises in and to the said Trustee, the Trustee's successors in trust and the Trustee's transferees and assigns, forever, against the lawful claims of all persons whomsoever claiming under Grantor.

    *1.    Liabilities Secured and Effect of Payment.* This conveyance is, however, made IN TRUST to secure the full, prompt and final payment to the Beneficiary of the Grantor's obligation under the terms of paragraph 16 of the Marital Dissolution Agreement dated December _____, 2004 incorporated in the Final Decree of Divorce in Copenhaver v. Copenhaver, Docket #86713, in the Fourth Circuit Court for Knox County, Tennessee, to which Agreement specific reference is hereby made.



EXHIBIT
"C"

Book 2148 Page 218

PROVIDED, FURTHER, if Grantor and/or Obligor shall perform all obligations herein contained and pay the Liabilities when due and perform according to the terms of all instruments relating thereto and/or any and all extensions thereof, and perform contractually as obligated, then this Deed of Trust is to be of no further force or effect.

2.      *Insurance.* The Grantor agrees to provide Beneficiary notice of insurance and keep all improvements and buildings on said Demised Premises insured against all hazards and risks through some reliable insurance company or companies in such amounts as may be from time to time specified by the Beneficiary, but in no event less than the replacement costs of the buildings and structures located thereon at the time of the loan or extension(s) of credit secured hereby, until the total sum and obligations hereby secured are fully paid and performed, and to have any loss payable to Beneficiary, as "Mortgagee", and to list Beneficiary on any and all such policies as the "Loss Payee" and as an "Additional Insured."

3.      *Care of Demised Premises.* Grantor:

(a)      will keep the improvements now or hereafter erected on the Demised Premises in good condition and repair, will not commit or suffer any waste and will not do or suffer to be done anything *(i)* which will increase the risk of fire or other hazard to the Demised Premises or any part thereof, or *(ii)* which will impair or adversely affect the value of the Demised Premises, including, but not limited to ENVIRONMENTAL INSULT to the Demised Premises, which is EXPRESSLY PROHIBITED.

(b)      will not remove, demolish or materially alter the design or structural character of any building, fixture, chattel or other part of the Demised Premises without the written consent of Beneficiary.

(c)      does hereby permit and authorize Beneficiary or its representatives to have reasonable access to the Demised Premises at all reasonable times for all purposes the Beneficiary deems appropriate, in its sole discretion, including but not limited to the conduct of environmental testing and sampling of the Demised Premises to determine the existence and extent of any contamination, or introduction or storage of hazardous materials.

(d)      will promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority or restrictions affecting the Demised Premises or any part thereof.

(e)      will, if all or any part of the Demised Premises shall be damaged by fire or other casualty, give immediate written notice of same to Beneficiary and will promptly restore the Demised Premises to the equivalent of its original condition; and if a part of such Demised Premises shall be taken or damaged through condemnation, Grantor will promptly restore, repair or alter the remaining property in a manner satisfactory to Beneficiary; provided, however, that the use of insurance or condemnation proceeds shall be subject to the Beneficiary's rights to such proceeds, and Beneficiary, in its sole discretion, may elect not to allow the use of such proceeds for repair or restoration and in which event the obligations of Grantor to so repair or restore shall not be enforceable.

If Grantor determines to introduce any material to the Demised Premises, such as rock, earth, or any other such substance for the purpose of fill or construction, Grantor shall, in all events, first obtain the advance written consent of Beneficiary. Beneficiary shall have the right, at Grantor's sole expense, to obtain an environmental audit to assure the innocuous nature of such material.

2

**4.** *Taxes and Utilities.* Grantor will pay, before the same become delinquent, all taxes, liens, assessments and charges of every character levied or assessed, or that may hereafter be levied or assessed, upon or against the Demised Premises and will pay all utility charges, whether public or private. Upon demand Grantor will furnish Beneficiary receipts evidencing such payment.

**5.** *Prior Encumbrances.* Grantor specifically agrees to pay or satisfy, before the same become delinquent and in accordance with the terms thereof, any prior encumbrance or lien. However, should Grantor fail or refuse to pay the obligations secured by such prior encumbrance or lien, the Beneficiary hereof is hereby expressly authorized (in its sole discretion) to pay such amounts, inclusive of any interest, penalties, or fees associated therewith. The Beneficiary shall be the sole judge of the legality, validity and priority of any such tax, lien, assessment, charge, claim and premium, of the necessity for any such actions, and of the amount necessary to be paid in satisfaction thereof. The Beneficiary is hereby empowered to enter upon and to authorize others to enter upon the Demised Premises or any part thereof for the purpose of performing or observing any such defaulted covenant, condition or term, without thereby becoming liable to the Grantor or any person in possession holding under Grantor for trespass or otherwise.

**6.** *Reimbursement of Expenses and Advances.* Grantor will immediately pay or reimburse Beneficiary and/or Trustee, or either of them, for all reasonable attorney's fees, costs and expenses incurred by them in any legal proceeding or dispute of any kind in which either or both of them are made a party, or appear as party plaintiff, defendant, or otherwise, affecting the indebtedness secured hereby, this Deed of Trust or the interest created herein, to the Demised Premises, including, but not limited to, the exercise of the power of sale under this Trust, any condemnation action involving the Demised Premises, or any action or protect the security hereof, and any such amounts paid by Beneficiary shall be added to the indebtedness secured by this Deed of Trust. Grantor shall immediately pay or reimburse Beneficiary and/or Trustee for all amounts advanced as herein authorized, or otherwise contemplated to be advanced upon Grantor's failure to pay the same. All such fees, costs, expenses and advances, made by Beneficiary under any provision hereof or otherwise, shall become Liabilities secured hereby, bearing interest from the date of payment until paid at the maximum effective rate of interest provided by law.

**7.** *Sale or Encumbrance.* Grantor shall have no right, power, or authority to sell, convey, transfer, or otherwise alienate or dispose of the Demised Premises, any part or parcel thereof or interest therein, and further shall have no right, in any manner whatsoever, to further encumber the Demised Premises, any part or parcel thereof or any interest therein, without having first obtained, in advance, the written consent of the Beneficiary, and specifically setting forth the manner and extent of such consent.

**8.** *Further Assurances.* At any time, and from time to time, upon request by Beneficiary, Grantor will make, execute and deliver or cause to be made, executed and delivered to the Beneficiary, any and all further instruments, certificates and documents as may, in the opinion of the Beneficiary, be necessary or desirable in order to effectuate, complete, perfect, continue or preserve the obligation of the Grantor under the Liabilities and the lien of this Deed of Trust. Upon any failure by the Grantor to do so, the Beneficiary may make, execute or record any and all such instruments, certificates or documents for and in the name of the Grantor and such Grantor hereby irrevocably appoints the Beneficiary, as Grantor's agent and attorney-in-fact coupled, with an interest, so to do.

3

Book 2148 Page 220

**9.** **_Condemnation._** If all or any part of the Demised Premises shall be damaged or taken through condemnation (which term when used herein shall include any damage or taking by any governmental authority or any transfer by private sale in lieu thereof), either temporarily or permanently, the Beneficiary shall be entitled to all compensation, awards, and other payments or relief thereof and is hereby authorized, at its option, to commence, appear in and defend or prosecute, in its own name or in the Grantor's name, or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action and proceeds and the right thereto are hereby assigned by the Grantor to the Beneficiary, who after deducting therefrom all its expenses, including attorney's fees, may release any monies so received by it without affecting the lien of this Deed of Trust and/or may apply the same in such manner as such Beneficiary shall determine, to the reduction of Liabilities secured hereby. Any balance of such monies then remaining may be paid to the Grantor or other persons legally entitled thereto. The Grantor agrees to execute such further assignment of any compensation, awards, damages, claims, rights of action and proceeds as the Beneficiary may require.

**10.** **_Grantor's Ownership of Assets._** Until all the Liabilities are paid in full, Grantor will not, either directly or indirectly, enter into any transaction of merger or consolidation, transfer of partnership interests where applicable, or transfer, sell, assign, lease, or otherwise dispose of (other than in the ordinary course of business) all or a substantial part of Grantor's properties or assets, or any stock where applicable, or any assets or properties necessary or desirable for the proper conduct of Grantor's business, or change the nature of Grantor's business, to wind up, liquidate or dissolve, or agree to do any of the foregoing.

**11.** **_Materialmen._** The Beneficiary has not and will not consent to any contract or to any work or to the furnishing of any materials which might be deemed to create a lien or liens superior to the lien of this Deed of Trust either under T.C.A. §66-11-101 *et seq.* or otherwise. Grantor will not suffer any mechanic's, materialmen's, laborer's, statutory or other lien to be created or to remain outstanding upon the Demised Premises or any part thereof.

**12.** **_Events of Default._** In addition to the foregoing, the occurrence of any one or more of the following events shall constitute a default by Grantor under this Deed of Trust:

    *(a)* Non-payment by Grantor, when due, whether by acceleration or otherwise, of any principal, interest, premium, fee or other charge on any of the Liabilities;

    *(b)* A breach by Grantor, or any guarantor of any provision of this Deed of Trust, any of the Liabilities, or any collateral document or any loan agreement;

    *(c)* Any warranty, representation or statement made or furnished to Beneficiary by Grantor or Obligor in connection with any of the Liabilities or in connection with this Deed of Trust (including any warranty, representation or statement made in the application of Grantor or Obligor for any loan or in any accompanying financial statements) or to induce Beneficiary to make any loan, proves to be untrue, misleading or false in any material respects;

    *(d)* Grantor : *(i)* discontinues his present business (including dissolution or any revocation of corporate charter or the death of any Grantor or Obligor); *(ii)* files any petition in bankruptcy or for the approval of a plan of reorganization or arrangement under the United States Bankruptcy Code, as it now exists or may be hereafter amended, or an admission seeking the relief therein provided; *(iii)* is unable to pay or admit their inability to pay their debts as they become due; *(iv)* makes an assignment for the benefit of creditors; *(v)* consents to the appointment of a receiver for all or a substantial portion of their property; *(vi)* fails to have vacated or set aside within sixty (60) days of its entry any order of any court appointing, without the affected

4

Grantor's or Obligor's consent, a receiver or trustee for all or a substantial portion of the Grantor's or Obligor's property; *(vii)* is adjudicated a bankrupt; or *(viii)* becomes insolvent, however otherwise evidenced; and/or

(e)     Any Grantor suffers or permits any lien, encumbrance or security interest in any amount to attach to any of its property, except as herein otherwise expressly permitted, or if any judgment shall be entered against any Grantor or any attachment shall be made against any property of any Grantor, which judgment or attachment shall remain undischarged, unbonded or undismissed for a period of thirty (30) days.

13.     *Trustee's Sale; Power of Sale.* In event of Grantor's failure to discharge fully and promptly each and every provision and obligation of all the Liabilities, collateral documents, and this Deed of Trust, all Liabilities secured hereby shall, at the option of the Beneficiary, become immediately due and collectible, without notice, which is hereby waived. The Trustee, having Power of Sale, is hereby authorized to then advertise the Demised Premises at least three (3) different times in some newspaper published in the county where the sale is to be made. The first publication shall be at least twenty (20) days previous to the sale, giving the names of the parties interested, describing the land in brief terms and mentioning the time, date, terms and place of sale, or as otherwise provided by law. The Trustee is specifically empowered to conduct the sale at the courthouse door in the County where the Demised Premises are located or on the site of the Demised Premises at the sole option of the Trustee. **The Trustee shall sell the Demised Premises within the legal hours of sale at public outcry to the highest and best bidder for cash and in bar of all equities of redemption, the Statutory Right of Redemption, homestead, dower and all other rights and exemptions of every kind, all of which are hereby expressly waived by Grantor.** The Trustee, or his successor in trust, is authorized to make a deed to the purchaser(s). The Beneficiary may bid at any sale under this Deed of Trust. The Trustee shall have multiple powers of sale as needed to conduct sales of the Demised Premises in parcels or lots at one (1) or more separate public sales.

The foreclosure sale(s) may be adjourned from time to time by Trustee, or his agent or successors, at the place(s) of sale on the date(s) the sale(s) is originally set, or on the date(s) of any announcement without any additional publication. The Trustee is expressly permitted to adjourn the sale(s) for the purpose of enabling the high bidder(s) to produce good funds. In the event the high bidder(s) fails to produce good funds by the time(s) established by the Trustee, the Trustee may sell the Premises to the second highest bidder.

14.     *Additional Rights of Trustee and Beneficiary Upon Default.* If an event of default shall have occurred, the Trustee, in addition to the exercise of the Power of Sale, may do any one or more of the following:

(a)     Enter upon and take possession of the Demised Premises without the appointment of a receiver, or an application therefor, employ a managing agent of the Demised Premises and let the same, either in its own name, or in the name of the Grantor, and receive the rents, rent subsidies, incomes, issues and profits of the Demised Premises and apply the same, after payment of all necessary charges and expenses, to the Liabilities.

(b)     Pay any sums in any form or manner deemed expedient by the Beneficiary to protect the security of this Deed of Trust; make any payment hereby authorized to be made according to any bill, statement or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiring into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of the Trustee or Beneficiary shall be

5

Book 2148 Page 222

conclusive evidence of the validity and amount of items so paid, and the Trustee or Beneficiary so paying shall be subrogated to any encumbrance, lien, claim or demand, and to all the rights and securities for the payment thereof, and any such subrogation rights shall be additional and cumulative security to this Deed of Trust.

     *(c)*    May, at the Beneficiary's option, instead of foreclosing this Deed of Trust by advertisement and sale as hereinabove provided, institute appropriate proceedings for foreclosure in equity or at law.

     Should all or any part of the Demised Premises conveyed by this Deed of Trust be involved in any insolvency, receivership, bankruptcy, either voluntary or involuntary, or other proceedings affecting the possession of such Demised Premises, or any foreclosure, it is further covenanted and agreed that the Beneficiary shall be entitled to all of the rents, issues, and profits realized from any such proceedings, whether there be a default under this Deed of Trust or not.

     *15.*    *Application of Sale Proceeds.*  In case of sale under this Deed of Trust, the proceeds collected shall be applied by the Trustee as follows:

     *First* - To pay all costs, fees and charges in connection with this trust, including reasonable attorney's or trustee's fees, and the expenses of any litigation and/or other matters which may arise relative to the execution, enforcement and/or protection of this Deed of Trust and the Liabilities secured hereby, including, without limitation, any taxes, liens or prior encumbrances of any nature whatsoever or advances made by the Beneficiary or the Trustee to any prior lienholder or claimant. Provided, however, the Trustee may sell the Demised Premises subject to such prior encumbrances, liens and taxes as may appear of record or otherwise, and in which event such debts shall not be paid from said proceeds to such prior lienholder or claimant. The attorney's fees and/or trustee's fees and expenses shall become absolutely due and payable whenever foreclosure is commenced and may not be compromised without the express written consent of the Trustee.

     *Second* - To pay any balance or balances of the Liabilities thereof then remaining unpaid, applying such proceeds to payment of the Liabilities in such order and manner as Beneficiary may in its sole discretion elect.

     *Third* - To pay any junior lienholders, however, if in the discretion of the trustee any question arises concerning such payment, to pay such sums into the registry of a court of competent jurisdiction.

     *Fourth* - The residue, if any, to be paid to Grantor, his order, or the persons legally entitled thereto.

     *16.*    *Deficiency.*  If the net sales proceeds are insufficient to pay all the Liabilities, Grantor and/or Obligor shall be liable for any deficiency.

     *17.*    *Successor Trustee.*  At any time and with or without cause, the Beneficiary herein secured is hereby authorized to name and appoint a Successor Trustee to execute the duties of this Deed of Trust, and the Demised Premises herein conveyed to the Trustee shall be vested in said successor. Any such appointment shall be recorded in the office of the Register of Deeds for the county in which the Demised Premises are located.

     *18.*    *Designation of Agent.*  The Trustee or his successor hereunder is hereby authorized and empowered to designate an agent, auctioneer, or attorney to perform any and all duties and obligations and to exercise all rights granted to the Trustee hereunder, including, without limitation, the right and power to conduct any sale with or without the Trustee's or successor's presence at same.

6

Book 2148 Page 223

19. _Right to Sue._ The Beneficiary shall have the right from time to time to sue for any sums, whether interest, principal or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of the Liabilities secured by this Deed of Trust, as the same become due, without regard to whether or not all of the Liabilities shall be due on demand, and without prejudice to the right of the Trustee and/or the Beneficiary thereafter to enforce any appropriate remedy against the Grantor, including foreclosure, or any other action, for a default or defaults by the Grantor existing at the time such earlier action was commenced.

20. _Rights Cumulative._ The rights of the Trustee and the Beneficiary, granting and arising under the clauses and covenants contained in this Deed of Trust and each of the Liabilities, shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which the Trustee and the Beneficiary may have in law or equity, and none of them shall be in exclusion of the others and all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under security deeds, and preservation of security as provided by law. No act of the Trustee or the Beneficiary shall be construed as an election to proceed under any one provision herein or under any of the Liabilities to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, . anything herein or otherwise to the contrary notwithstanding.

21. _Tenancy at Will._ In the event of a sale of the Demised Premises under and by virtue of this trust, then the said Grantor and all persons holding under it shall be and become the tenant at will of the purchaser(s) of the same, from and after the execution and delivery of a deed to such purchaser(s), said tenancy to be terminated at the option of said purchaser(s). ;

22. _Sale to Operate as a Bar._ Any sale under or by virtue of this trust shall operate to divest all estate, right, title, interest, claim, or demand whatsoever, whether at law or in equity, of the Grantor in and to the Demised Premises so sold, and shall be perpetual bar both at law and in equity against the Grantor, its heirs, executors, administrators, successors, and assigns, as . applicable, and against any and all persons claiming or who may claim the same or any part thereof, from, through or under the Grantor, its heirs, executors, administrators, successors, or assigns, as applicable.

23. _Receipt Sufficient Discharge for Purchaser._ The receipt of the Trustee or of the court officer conducting any sale hereunder for the purchase money paid at any such sale shall be a sufficient discharge thereafter to any purchaser of the property, or any part thereof or interest therein, sold as aforesaid; and no such purchaser or its representatives, grantees, or assigns, after paying such purchase money and receiving such a receipt, shall be bound to see to the application of such purchase money upon and for the purposes of this Deed of Trust or shall be answerable in any manner whatsoever for any loss, misapplication, or non-application of any such purchase money or any part thereof, nor shall such purchaser be bound to inquire as to the necessity or expediency of any such sale.

24. _Designation of Parties._ The designation of the parties to this instrument in either the plural or singular shall be applied to mean either number, and where appropriate in the context hereof, shall mean any one or more of said parties, and the use of any pronoun herein shall include the masculine, feminine and neuter genders. The words "Grantor", "Trustee", and "Beneficiary" whenever used herein shall include the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, where appropriate, either gender and both singular and plural.

7

Case 3:15-cv-00244-TAV-HBG Document 1-1 Filed 06/10/15 Page 153 of 162 PageID #: 155

25. *Waivers.* No omission or delay by Trustee or Beneficiary in exercising any right or power under this Deed of Trust or under any of the Liabilities shall impair such right or power or be construed to be a waiver of any default or an acquiescence therein; and any single or partial exercise of any such right or power shall not preclude other or further exercise thereof or the exercise of any other right; and no waiver shall be valid unless in writing and signed by Beneficiary, and then only to the extent specified.

26. *Severability.* The provisions herein contained and contained in the Liabilities shall be severable, and if any provision hereof or of any of the Liabilities shall be found to be void, illegal or unenforceable, then the remaining provisions hereof or of the Liabilities shall continue in full force and effect, and this Deed of Trust and the Liabilities shall be so construed as to give effect, as nearly as possible, to the original intent of the parties hereto.

27. *Captions.* The captions or headings of the paragraphs hereof are for convenience and reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

28. *Trustee's Oath.* The necessity of Trustee making oath, filing inventory or giving bond as security for the execution of this trust, as now or hereafter required by the laws of the State of Tennessee, is hereby expressly waived.

29. *Modification.* Except as may affect sums owing to the Trustee or his attorney, the approval by the Trustee of any modification of this Deed of Trust shall not be necessary or his signature required, but rather only a writing signed by the Grantor and Beneficiary.

30. *Joinder.* The spouse of any Grantor, who is not a record owner, executes this instrument in order to sell, transfer and convey the Demised Premises in trust to the Trustee, to encumber any and all marital and other interests in the Demised Premises, to waive any and all exemptions such spouse may have in the Demised Premises by reason of marriage or otherwise, and to consent to the sale, waiver and encumbrance of any and all marital rights in the Demised Premises.

IN WITNESS WHEREOF, Grantor has executed this Deed of Trust or has caused this Deed of Trust to be executed by a duly authorized representative, the date first above-written.

GRANTOR:

Ralph T. Copenhaver

8

Book 2148 Page 225

STATE OF _Tennessee_     §
                         §
COUNTY OF _Knox_         §

Personally appeared before me, the undersigned authority, a duly commissioned Notary Public in and for the State and County aforesaid, _Ralph T. Copenhaver_ with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that _he_ executed the within instrument for the purposes therein contained.

Witness my hand at office this the _3rd_ day of _December_, _2004_.

My Commission Expires: _1/30/2005_            _Notary Public_

NOTARY
PUBLIC
Seal
LARGE
KNOX CO., TENN.

9

EXHIBIT A

SITUATED in the Fifth Civil District of Sevier County, Tennessee and lying on the waters of Mill Creek and being more particularly described as follows:

Beginning on an iron pin at an elm, corner to LaFollette Addition No. 1 and Gazley; thence with Gazley line North 61 deg. 45 min. West 100 ft. to an iron pin; thence with Gazley line North 69 deg. West 50 ft. to an iron pin, corner to Gazley and Pickel; thence with Pickel line North 41 deg. East 167.5 ft. to the center line of Mill Creek; thence with the center of Mill Creek South 22 deg. East 162.5 ft. to a point in the center of Mill Creek corner to LaFollette Addition No. 1; thence South 41 deg. West with LaFollette Addition No. 1 line 54 ft. to the point of BEGINNING, containing .369 acres more or less.

THERE IS ALSO conveyed with this conveyance a 20 foot easement to Florence Drive described as follows:

BEGINNING on a point in the center of Mill Creek, corner to the above property and LaFollette Addition No. 1; thence with LaFollette Addition No. 1, North 41 deg. East 243 feet to a point corner to LaFollette Addition No. 1 and Florence Drive; thence North 41 deg. East 50 feet across Florence Drive; thence northwest 20 feet; thence South 41 deg. West 293 feet to a point in the center of Mill Creek. This line is parallel with the property line of LaFollette Addition No. 1; thence with the center of Mill Creek 20 feet to the point of BEGINNING. Said right of way easement is across the northeast portion of the Pickel property and lies to the northwest of LaFollette Addition No. 1 line.

BEING the same property conveyed to Ralph T. Copenhaver by deed dated February 15, 1990, and of record in Deed Book 433, page 298, in the Register's office for Sevier County, Tennessee.

VOL:2148/218-227
05001386

| | |
|---|---|
| TR 10 PG BA: 52560 | |
| 01/06/2005 | 11:35 AM |
| VALUE | 123000.00 |
| MTG TAX | 339.15 |
| TRN TAX | 0.00 |
| REC FEE | 50.00 |
| DP FEE | 2.00 |
| REG FEE | 1.00 |
| TOTAL | 392.15 |

STATE OF TENNESSEE, SEVIER COUNTY
SHERRY ROBERTSON HUSKEY
REGISTER OF DEEDS





**WESTFIELD**
INSURANCE
Sharing Knowledge. Building Trust.®

February 9, 2015

Ralph T. Copenhaver DDS
C/O Mr. Jeffrey H. Novinger, CPA
4110 Sutherland Ave
Knoxville, TN 37919

RE:  Insured:      Ralph T. Copenhaver DDS dba The Dental Center
     Claim No:    R-BOP-0647564-051014-A
     Date of Loss: May 10, 2014
     Location:    2610 Florence Dr

***Via Certified Mail, RRR***
***and Regular U.S. Mail***

RE:  **Insured:      Ralph T. Copenhaver DDS dba The Dental Center**
     **Policy No.:  BOP-0647564**
     **Claim No:    R-BOP-0647564-051014-A**
     **Date of Loss:      May 10, 2014**
     **Location:    2610 Florence Dr, Pigeon Forge, TN 37863**

Dear Dr. Copenhaver:

Westfield Insurance Company ("Westfield") has completed its investigation into the circumstances of your claim submitted under the above-referenced insurance policy ("the policy") and arising out of the fire loss that occurred on or about May 10, 2014 at 2610 Florence Drive, Pigeon Forge, TN ("the property"). This letter is to inform you Westfield is denying your claim.

The Businessowners Coverage Form of your policy (Form BP 00 03 01 10) provides in pertinent part that,

**EXHIBIT**
**"D"**

One Park Circle • P.O. Box 5001 • Westfield Center, OH 44251-5    0 • www.westfieldgrp.com

## SECTION I – PROPERTY

### A.    Coverage

We will pay for direct physical loss of or
damage to Covered Property at the premises
described in the Declarations caused by or
resulting from any Covered Cause of Loss.

*
*
*

### 3.    Covered Causes of Loss

Risks of direct physical loss unless the
loss is:

a.    Excluded in Paragraph **B.** Exclusions
in Section **I**; or

b.    Limited in Paragraph 4. Limitations
in Section **I**.

*
*
*

### E.    Property Loss Conditions

### 3.    Duties In The Event Of Loss Or Damage

a.    You must see that the following are
done in the event of loss or damage
to Covered Property:

(1)    Notify the police if a law may
have been broken.

(2)    Give us prompt notice of the
loss or damage. Include a de-
scription of the property in-
volved.

(3)    As soon as possible, give us a
description of how, when and
where the loss or damage oc-
curred.

(4)    Take all reasonable steps to
protect the Covered Property

One Park Circle • P.O. Box 5001 • Westfield Center, OH 44251-5001 • 1.800.243.0210 • fax 330.887.0840 • www.westfieldgrp.com

from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance of Section I - Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

One Park Circle • P.O. Box 5001 • Westfield Center, OH 44251-5001 • 1.800.243.0210 • fax 330.887.0840 • www.westfieldgrp.com

4

 

                **(9)**    Resume all or part of your "op-
erations" as quickly as possible.

        **b.**    We may examine any insured under
oath, while not in the presence of
any other insured and at such times
as may be reasonably required,
about any matter relating to this in-
surance or the claim, including an
insured's books and records. In the
event of an examination, an in-
sured's answers must be signed

## B.   Exclusions

   **2.**   We will not pay for loss or damage
caused by or resulting from any of the
following:

      **f.**   **Dishonesty**

Dishonest or criminal acts by you,
anyone else with an interest in the
property, or any of your or their
partners, "members", officers,
"managers", employees, directors,
trustees, authorized representatives
or anyone to whom you entrust the
property for any purpose:

                  \*
                  \*
                  \*

      **k.**   **Neglect**

Neglect of an insured to use all rea-
sonable means to save and preserve
property from further damage at and
after the time of loss.

One Park Circle • P.O. Box 5001 • Westfield Center, OH 44251-5001 • 1.800.243.0210 • fax 330.887.0840 • www.westfieldgrp.com

## SECTION III – COMMON POLICY CONDITIONS
## (APPLICABLE TO SECTION I – PROPERTY AND
## SECTION II – LIABILITY)

*
*
*

### C.    Concealment, Misrepresentation Or Fraud

This policy is void in any case of fraud by you
as it relates to this policy at any time. It is
also void if you or any other insured, at any
time, intentionally conceal or misrepresent a
material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

Based upon its extensive investigation of this claim, it is Westfield's belief that you have
been guilty of dishonesty and a criminal act relating to the fire loss on May 10, 2014 and
further that you have failed to protect and preserve the property described in the
declarations page at which the fire happened. More specifically, Westfield's
investigation reveals that this was an incendiary fire that in which gasoline was used to
intentionally start the fire in multiple locations of the property; that you had a financial
motive for causing the fire; and that you had ample opportunity to cause the fire.
Moreover, Westfield's investigation has not yielded any substantial or credible evidence
that the fire was caused by anyone but you.

Furthermore, it is Westfield's belief that you have been guilty of dishonesty and/or
misrepresentation in connection with the presentation of your claim made in this case.
For example, you have provided varying and inconsistent statements regarding your
movements and the events surrounding the fire. You have made statements which
Westfield believes are untrue relating to security measures in place at the property at
the time of the fire. You have made statements which Westfield believes to be untrue
regarding the existence and location of flammable liquids inside the property at the time
of the fire. Moreover, you admitted in your sworn examination under oath that you made
no effort to ascertain the accuracy of the damage amounts claimed in your sworn
statements in proof of loss but notwithstanding submitted them to Westfield as part of
your claim.

Finally, it is Westfield's belief that you have failed to cooperate in the investigation of
this claim as required by the policy. More particularly, Westfield has made repeated
requests for various documents and items material to the investigation of your claim

over a period of months and you have failed to reasonably comply with those requests. You admitted in your examination under oath that you had not made any personal effort to secure and provide any documents requested and notwithstanding your production of some documents, other material items remain unfurnished. Among those are your telephone records and records relating to the alarm system in the property, neither of which are available to Westfield except through you.

By providing this letter, it is not the intention or agreement of Westfield to waive any provisions, conditions or requirements of the policy or any other defenses that it may have to your claim which are not expressly set out herein above. Westfield reserves all of its rights and nothing in this communication should be construed as a relinquishment, waiver or limitation of any of those rights.

Sincerely,

Luc Rogiers, AIC, SCLA
General Adjuster – Property