| | |
|---|---|
| CAROLE COPENHAVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:15-CV-244-TAV-HBG |
| | ) |
| WESTFIELD INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This civil action is before the Court on defendant's Motion for Summary Judgment [Doc. 5] and plaintiff's Motion to Strike [Doc. 14]. Plaintiff filed a response in opposition to defendant's motion for summary judgment [Doc. 15], defendant replied [Doc. 19], plaintiff filed a sur-reply [Doc. 25], and defendant responded to the sur-reply [Doc. 26]. Defendant responded to plaintiff's motion to strike [Doc. 20]. Having reviewed the parties' arguments, the record in this case, and relevant law, the Court will grant defendant's motion for summary judgment and deny as moot plaintiff's motion to strike.

**I.     Background**

Ralph Copenhaver, plaintiff's ex-husband, owned a dental office at 2610 Florence Avenue, Pigeon Forge, Tennessee ("the property") [Doc. 17 ¶¶ 1–2, 5]. Dr. Copenhaver and plaintiff entered into a Marriage Dissolution Agreement that includes a provision giving plaintiff an interest in the property [Doc. 1-1 p. 142]. The agreement states that

plaintiff's "interest shall be secured by a Deed of Trust, which shall be junior to the lien of First Tennessee Bank" [*Id.*]. The deed of trust contains an insurance provision that states the following:

> The Grantor agrees to provide Beneficiary notice of insurance and keep all improvements and buildings on said Demised Premises insured against all hazards and risks through some reliance insurance company or companies in such amounts as may be from time to time specified by the Beneficiary, but in no event less than the replacement costs of the buildings and structures located thereon at the time of the loan or extension(s) of credit secured hereby, until the total sum and obligations hereby secured are fully paid and performed, and to have any loss payable to Beneficiary, as "Mortgagee", and to list Beneficiary on any and all such policies as the "Loss Payee" and as an "Additional Insured" [*Id.* at 148].

The deed of trust was filed in the Register of Deeds office for Sevier County, Tennessee, on January 6, 2005 [Doc. 21 ¶ 2].

Defendant issued a Business Owners Policy relating to the property with a policy term of August 9, 2013 to August 9, 2014 [Doc. 17 ¶ 1]. On May 10, 2014, a fire destroyed the main building situated on the property [*Id.* ¶ 3]. Defendant conducted an investigation into the fire [*Id.* ¶ 4]. Upon completion of this investigation, defendant paid the outstanding debt owed to First Tennessee Bank, which held a mortgage on the property and was named as a loss payee/mortgagee in the policy [*Id.*]. Dr. Copenhaver filed a claim under the policy, which defendant denied [*Id.*].

Plaintiff also made a demand for payment under the policy as a mortgagee and defendant denied that claim [*Id.* ¶ 7]. Plaintiff filed this action to recover under the insurance policy [Doc. 1-1].

**II.     Motion to Strike Affidavit of Luc S. Rogiers**

Plaintiff moves to strike the affidavit of Luc S. Rogiers. The Court need not consider the affidavit to come to its conclusion, nor would the document alter the Court's conclusion that there is no genuine issue of material fact that precludes summary judgment in defendant's favor. Consequently, the Court will deny as moot plaintiff's motion to strike the affidavit.

**III.    Motion for Summary Judgment**

Defendant filed a motion for summary judgment arguing that there is no genuine dispute as to any material fact and defendant is entitled to judgment as a matter of law.

**A.     Standard of Review**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of

3

allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### B. Analysis

Under Tennessee law, "[t]he question of the extent of insurance coverage is a question of law involving the interpretation of contractual language[.]" *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012). "Insurance contracts are 'subject to the same rules of construction as contracts generally,' and in the

4

absence of fraud or mistake, the contractual terms 'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties.'" *Id.* (quoting *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386–87 (Tenn. 2009)). As the Sixth Circuit has noted:

> If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language, and any uncertainties or ambiguities in an insurance policy must be construed strongly against the insurer and in favor of the insured. A strained construction may not be placed on the language used to find ambiguity where none exists, and a contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions.

*Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 499 F. App'x 559, 562 (6th Cir. 2012) (alterations, internal quotation marks, and citations omitted). Insurance policies should also not be interpreted in a manner that "would lead to an absurd conclusion or render the policy nonsensical or ineffective." *Dixon v. Gunter*, 636 S.W.2d 437, 441 (Tenn. Ct. App. 1982) (citation omitted).

Insurance policies should be construed "as a whole in a reasonable and logical manner," and the disputed language "should be examined in the context of the entire agreement." *Garrison v. Bickford*, 377 S.W.3d 659, 664 (Tenn. 2012) (citations and internal quotation marks omitted). "The essential components of a general liability insurance policy include (1) the declarations, (2) the insuring agreements and definitions, (3) the exclusions, (4) the conditions, and (5) the endorsements." *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998).

Tennessee courts provide loss payee protection, under fire insurance policies, for mortgagees if the mortgagee is "actually named in the insurance policy" or "where the insurance policy has been validly assigned" to the mortgagee loss payee. *Citizens Tri-Cty. Bank v. Ga. Mut. Ins. Co.*, 11 S.W.3d 120, 124 (Tenn. Ct. App. 1999). An insurance policy does not "run with the title." *Id.* at 124 (citation and internal quotation marks omitted). Further, "if the insurer does not have notice or knowledge of the existence of the mortgagee's equitable lien on the proceeds it cannot be sued by the mortgagee for the proceeds." *Cowles v. St. Paul Fire & Marine Ins. Co.*, 1987 WL 25381, at *2 (Tenn. Ct. App. Dec. 4, 1987).

Plaintiff asserts that, despite not being named in the insurance policy, she is entitled to payment as a loss payee under the policy between Dr. Copenhaver and defendant. Plaintiff argues that she is entitled to payment because she qualifies as an additional insured. The declarations pages of the policy indicate that certain classes of persons or entities are designated as additional insured [Doc. 6-1 p. 1]. The relevant language states: "Additional Insured – Mortgagee," and provides that there is "[a]utomatic status when required by contract" [*Id.*]. Plaintiff contends that because her marital dissolution agreement gave her an interest in the property, and the deed of trust required Dr. Copenhaver to maintain insurance on the property and to name plaintiff as a mortgagee, a loss payee, and an additional insured in the policy, plaintiff is entitled to automatic status [Doc. 1-1 pp. 142, 150].

6

Defendant counters this argument by contending that the language on the declarations pages is not what vests those persons or entities with status; rather, it is from the several endorsements attached to the policy that they derive their status as additional insured. Plaintiff's name is not listed on the endorsement for "Additional Insured – Mortgagee" [Doc. 6-1 p. 5]. Furthermore, defendant argues that even if plaintiff acquired additional insured status, that status only provides liability coverage and not any first-party coverage for loss to the property itself. The portion of the policy that provides coverage for mortgagees and loss payees as to first-party claims repeatedly refers to the "Loss Payee shown in the Schedule or in the Declarations" [Doc. 6-1 pp. 15–16]. The declarations pages only name First Tennessee Bank is a loss payee, and make no mention of plaintiff [Doc. 6-1 p. 2]. Since plaintiff is not designated as a loss payee in the policy, defendant contends that she does not have any first-party coverage for loss to the property.

Plaintiff, however, notes that the declarations pages do not reference the endorsements when mentioning the additional insured status. The declarations pages also do not indicate that coverage for the additional insured is limited to liability coverage [*Id.* at 1–2]. Because the declarations pages are silent, she argues that the insurance contract is ambiguous as to who qualifies as an additional insured and what coverage is afforded to an additional insured. Plaintiff then maintains that the ambiguity should be "construed in favor of the insured," and thus, she is entitled to coverage. *Cracker Barrel Old Country Store*, 499 F. App'x at 562.

Upon review of the policy, the Court does not find any ambiguity as to the relevant provisions. Although plaintiff is correct that the declarations pages provide that a mortgagee is an additional insured and has automatic status when required by contract, the Court cannot rely solely on the declarations pages when determining the scope of coverage. Instead, the Court reviews the insurance policy "as a whole in a reasonable and logical manner." *Garrison*, 377 S.W.3d at 664.

Even if the Court accepts that plaintiff is an additional insured, it is not reasonable to assume that an individual who qualifies as an additional insured automatically retains loss-payee coverage. Although the declarations pages do not specify what coverage an additional insured party receives, the inquiry does not stop with the declarations pages. Upon examination of the entire policy, specifically the endorsements, there is no ambiguity that additional insured status only provides liability coverage and not any first-party coverage for loss to the property itself. The "Additional Insured – Mortgagee" endorsement only references modifications to the liability portion of the policy, and does not mention loss-payee coverage [Doc. 6-1 p. 5].

Furthermore, the loss-payee section of the declarations pages only list First Tennessee Bank as a loss payee. After reading the policy has a whole, as evidenced by the "Loss Payable Clauses," there is no ambiguity that only the named insured and the "Loss Payee shown in the Schedule or in the Declarations" may be entitled to first-party coverage for loss to the property itself [*Id.* at 15–17]. The Business Owners Coverage

8

Form provides that that defendant "will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations" [*Id.* at 17]. Plaintiff's name is not found anywhere in the agreement, let alone in the schedule or the declarations pages. Accordingly, she is not entitled to loss-payee coverage.

Further, Tennessee law provides that because plaintiff was not "actually named in the insurance policy," even if she is a mortgagee, she is not entitled to loss-payee protection. *Citizens Tri-County Bank*, 11 S.W.3d at 124. An insurance policy does not "run with the title." *Id.* at 24. Despite plaintiff's valid interest in the property, she does not retain loss payee coverage unless she is actually named in the policy. Also, there is no indication in the record that defendant had any notice or knowledge of the existence of plaintiff's interest in the land. Consequently, defendant cannot be sued for the proceeds. *Cowles*, 1987 WL 25381, at *2 ("[I]f the insurer does not have notice or knowledge of the existence of the mortgagee's equitable lien on the proceeds it cannot be sued by the mortgagee for the proceeds.").

Plaintiff also argues that reading the insurance policy as defendant suggests would lead to an absurd conclusion, and is thus an impermissible reading. *See Dixon*, 636 S.W.2d at 441 (prohibiting the interpretation of an insurance policy that "would lead to an absurd conclusion or render the policy nonsensical or ineffective"). She contends that First Tennessee Bank's status as a loss payee does not exclude a second mortgage holder from retaining coverage. The Court, however, is not holding that First Tennessee Bank's

status precludes plaintiff's ability to retain loss payee status.  Plaintiff does not retain loss payee coverage because she is not listed as an additional loss payee, and because defendant was not on notice of her interest in the property.

Plaintiff argues further that following defendant's interpretation of the policy would result in a situation where if First Tennessee Bank chose to sell or assign its mortgage interest, the purchaser or assignee would not have been entitled to recover under the policy.  Tennessee courts, however, provide loss payee protection, under fire insurance policies, for mortgagees "where the insurance policy has been validly assigned" to the mortgagee loss payee. *Citizens Tri-Cty. Bank*, 11 S.W.3d at 124.  A purchaser or assignee, therefore, need only take an additional step to retain coverage under an insurance policy.  Accordingly, the Court does not find that defendant's proposed interpretation yields absurd results. *See Dixon*, 636 S.W.2d at 441.

In sum, there is no ambiguity that plaintiff is not entitled to loss payee coverage under the insurance policy, and the Court's does not find that its reading of the policy leads to absurd results.   Accordingly, there is no genuine dispute as to any material fact and defendant is entitled to judgment as a matter of law.

## IV. Conclusion

For the reasons stated herein, the Court will **GRANT** defendant's Motion for Summary Judgment [Doc. 5] and **DISMISS** this action. The Court will **DENY as moot** plaintiff's Motion to Strike [Doc. 14]. The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE